Richard **HOLLAND**, Petitioner,

v.

Otto C. **BOLES**, Warden of the West Virginia State Penitentiary, Respondent.

**Civ. A. No. 1245-W.**

United States District Court
N. D. West Virginia,
at Wheeling.

Dec. 16, 1963.

Jeremy C. McCamic, Jolyon W. Mc-Camic, Wheeling, W. Va., for petitioner.

Thomas B. Yost, Asst. Atty. Gen., for respondent.

CHARLES F. PAUL, Chief Judge.

Richard Holland is serving a life sentence, imposed in 1952, for murder. He complains that he did not enjoy his constitutional right to the effective assistance of counsel in the proceedings leading up to his conviction and sentence, because his lawyer was serving conflicting interests and could not and did not give his undivided loyalty to Holland's case.

■ Holland made the same contention in habeas corpus procedings before a State court in 1957. At the conclusion of a plenary evidentiary hearing, his claim was denied. Finding that that hearing was a full and fair one, this court will give full effect to the State court's findings of historical fact, insofar as there were such findings,[1] but it

1. The oral opinion of the Common Pleas Court of Cabell County, West Virginia, delivered at the conclusion of the hearing, is as follows:

"I think I would have to rule from the evidence there was no request made by the petitioner for additional counsel at the time this case was actually being proceeded with five years ago. I think the evidence is just almost conclusive there was no such request made to the Judge and from the testimony that we have heard here today, I would have to find that. Apparently the petitioner was satisfied with his attorney and the way the attorney was handling the trial of the case at the time, and also stated that there has never been any question raised as to the competency of Mr. Perry to handle the case and, for the record, the court will state authoritively (sic) that Mr. Perry is a competent attorney at this bar, who has handled many cases of this nature. The only serious question is whether there was any such confliction of interest that would deprive this petitioner of the effective assistance of counsel and before we could find there had been any depriving of effective assistance, you would naturally have to show there was conflict which would render it improper for Mr. Perry to handle the case for both clients.

"I think the mere fact that Richard Holland and his sister were indicted jointly would not mean that there was any confliction of interest. It could, very easily, mean that their interests would run along the same line. It would mean that testimony fallible to one would be fallible to the other, so I see nothing from the record there that would indicate as a matter of fact or course, that there was any conflict of interest at all. I feel that if the court—Judge Warth or Judge Baer had seen at the time there was any conflict, additional counsel would have been appointed. I think also that it would be presumed that if there had been any conflict at that state of the proceedings, Mr. Perry would have withdrawn from one or the other cases and as I said before, there is nothing in this record to indicate that there actually was a confliction of interest, so seeing none prima facie from the record, certainly Mr. Perry is entitled to that presumption as would be the respective Judges.

"I feel that the mere fact that one entered a plea of involuntary manslaughter and the other entered a plea of guilty to murder in the first degree would not indicate that there was a confliction, also I might say that our Supreme Court of Appeals has specifically approved, of long standing, the custom of the Prosecuting Attorney and Defense Attorney agreeing that such and such a plea would be proper under circumstances of the case and the mere fact that agreement was had, of course, would not indicate that any one interest was neglected or overlooked. We had testimony here today that—both by Mr. Perry and by Mr. Green and Mr. Morgan that the pleas entered in the light of all of the expected testimony were proper; that there was no undue or unfair advantage taken of this petitioner, and although we can speculate that possibly some jury might have rendered a verdict of guilty of a lesser offense, still the same or a different jury might have rendered a verdict of guilty without any recommendation, making mandetory (sic) that petitioner receive

cannot, pursuant to the guidelines laid down in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), give binding effect to the ultimate conclusion of the State court.

Holland and his sister June were jointly indicted by the grand jury for the same murder. Neither having funds to employ a lawyer, another sister employed one, Perry, to represent both. Both were arraigned by the regular Judge of the Common Pleas Court of Cabell County on the same day, and, with Perry representing them, entered pleas of not guilty and their cases were continued for trial. The regular judge died shortly thereafter and a special judge was elected by the Bar of the court, under appropriate statutory provisions, for the purpose of trying their cases. Perry negotiated with the Prosecuting Attorney and secured an agreement of the latter, as a package deal, that he would recommend to the court the acceptance of a plea of first degree murder by Holland, and would recommend life imprisonment, and a plea of guilty to voluntary manslaughter by June, carrying the mandatory sentence of 1 to 5 years. Perry recommended this arrangement to his clients and Holland readily agreed. Accordingly, the two, with Perry, appeared before the special judge, withdrew their pleas of not guilty, entered their guilty pleas, which were accepted by the court, and the agreed-upon sentences were imposed.

At the habeas corpus hearing held some 5 years later, it was shown that Perry had knowledge of the following factual situation:

The victim, Holland and his sister June, were mutual friends and had been engaged in a prolonged drinking party at Holland's mother's house, when a sudden altercation developed. The victim was knocked down by a blow upon the head. The record here does not show who inflicted the blow or with what instrument or effect, but Holland, in an intoxicated condition, brutally kicked the victim's face and head, whether before or after death does not appear. If the cases had gone to trial, Perry planned to defend June by attempting to show that Holland was solely responsible, and, to this end, had armed himself with a written statement by Holland exculpating June. Perry was convinced that Holland was principally responsible, but that June was involved, and was afraid that, because of the brutal nature of the murder, juries might convict both of the homicide and that the verdict against Holland might be for first degree murder without recommendation for mercy, and so advised both clients. This, in spite of the fact that the West Virginia statute (Code Chapter 61, Article 2, Section 1; Michie's Code Section 5916) makes premeditation an essential element of first degree murder, and that Perry knew that the killing was not in pursuance of any preconceived plan or in the commission of any other crime mentioned in the statute.

Even without second guessing the attorney on the propriety or desirability of the advice he gave his clients, it is impossible to escape the conclusion that he was laboring under the impossible task of correctly and effectively advising two clients with divergent interests.

█ The law is clear that such an attempt to serve two masters with conflicting interests renders the attorney incapable of giving to either the impartial, disinterested and effective representation that is the constitutionally-protected right of each. See, e. g., Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

█ The constitutional infirmity inherent in proceedings conducted under

---

the death sentence, so I think that the mere fact he might or might not have received a definite finding from the jury, if any, is not conclusive.

"I feel that there was nothing improper about the way that his case was handled and in as much as there does not appear from the record that there was a conflict of interest, I am unwilling to engage in the presumption there was, so

"I will have to rule that the petitioner is not entitled to the relief prayed for and deny the writ."

such circumstances is not affected by the fact that the attorney with the dual and irreconcilable loyalties is privately employed rather than court appointed. Cf. Case v. North Carolina, 315 F.2d 743 (4 Cir. 1963); United States v. Harris, 155 F.Supp. 17 (D.C.Cal.1957); Porter v. United States, 298 F.2d 461 (5 Cir. 1962); Craig v. United States, 217 F.2d 355 (6 Cir. 1954).

There remains for consideration the effect, if any, of the fact that the record here is devoid of proof that either the regular judge or the special judge was sufficiently aware of the factual situation to recognize and appreciate the inevitable conflict of interests. The effect upon the accused is the same whether or not the court knew Holland was improperly represented. He has not been accorded the effective representation by counsel to which he is constitutionally entitled under the decision of the Supreme Court in Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Judge Denman, of the Ninth Circuit, in the original opinion in Hayman v. United States, 187 F.2d 456, at page 460 (1951), has this to say: "If, unknown to the court, the accused's counsel were bribed by an enemy of the accused to throw his case and the accused learned of it after conviction, the fact that the court had nothing to do with the wrong done, does not deprive him of his right to the writ." At any rate, Perry's representation, under the facts in this case, was so equivocal that it would seem incumbent upon the court to inquire into it. Here were two persons, each accused, *as principal,* of the same murder. Unless the defense were some such thing as a common alibi or an impregnable alibi by one, it is difficult to see how the same counsel properly could represent both. It should also be noted that the Prosecuting Attorney, an agent of the State and an officer of the court, had full knowledge of the facts. Under the peculiar facts of this case, it would seem that the petitioner should not be denied his right to invoke his constitutional privilege, even though the court committed no act of deprivation.

■ This opinion would not be complete without some discussion of the question as to whether Holland should be denied relief because he had waived his right to be represented by counsel with no interests to serve but his own. It is clear, despite Holland's testimony to the contrary, that Holland never requested the appointment of disinterested counsel; that he was in possession of all the facts which, to a lawyer at least, made Perry's representation of him improper; that he willingly accepted and followed Perry's advice, possibly out of fraternal concern for his sister; and that his first exhibition of discontent with the result followed the event by some 5 years. Waiver of a constitutional right is not lightly to be implied or assumed. Cf. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). If such waiver is to be assumed at all, it can only be in situations in which it is abundantly clear that the accused has not only a full knowledge of all the facts and of his rights, but a full appreciation of the legal effects of his voluntary relinquishment. The doctrine can only be applied where the accused had a reasonable choice, and, for tactical or other valid reasons, knowingly and understandingly gave up the one in favor of the other. We cannot here assume that Holland had any such full knowledge and appreciation. We certainly cannot assume Holland had a lawyer's appreciation of his possible defenses to the indictment for first degree murder and of the conflict between his interests and those of his sister.

It is the duty of this court to order the conditional release of Holland and to stay the execution of the order for a reasonable time to permit the State, if it can, to afford Holland a new and constitutionally unexceptionable trial. Counsel will be heard at their earliest convenience, not later than December 23d, on the question of fixing such reasonable time.