**Jesse CAYSON and Doyle Cayson, Petitioners,**

v.

**D. R. HASSFURDER, as Superintendent of Avon Park Correctional Institution, Respondent.**

**No. 66–36 Civil T.**

United States District Court
M. D. Florida,
Tampa Division.

April 26, 1966.

Brooks Taylor, Crestview, Fla., for petitioners.

George Georgieff, Asst. Atty. Gen., State of Florida, Tallahassee, Fla., for respondent.

LIEB, District Judge.

This cause came on to be heard upon the petition for writ of habeas corpus filed on behalf of the petitioners, Doyle Cayson and Jesse Cayson, and the response to order to show cause filed by the respondent, D. R. Hassfurder. The Court granted the petition for writ of ha-

beas corpus; and a hearing to take testimony was held before this Court on Thursday, March 31, 1966, at which hearing the petitioners were present and were represented by counsel. The petitioners have exhausted their state remedies; and their claims are properly before this Court for a determination on the merits.

The Caysons were indicted on July 11, 1958, and charged with the first degree murder of Les Wilson on March 14, 1940. Thomas D. Beasley, presently a Circuit Judge of the First Judicial Circuit of Florida, was then retained to defend them. The petitioners were tried in the Circuit Court of Okaloosa County before Judge Erwin Fleet and were convicted and sentenced to life imprisonment.

The petitioners attack their conviction on two grounds: First, that there was a conflict of interest on the part of the Caysons' retained counsel, which denied the petitioners a fair trial, violating their right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution; Second, that Judge Fleet was disqualified from presiding at the trial by virtue of the fact that, at the time the indictment was returned against the petitioners, Judge Fleet was an Assistant State Attorney in the office of the State Attorney which secured the grand jury indictment.

As to the petitioners' contention that their attorney was shackled by a conflict of interest, the facts appear to be that several years prior to the indictment being returned against the petitioners, Thomas D. Beasley was representing a person who told Beasley of facts implicating himself and two others, not the Caysons, in the death of Les Wilson. Beasley never represented that person with respect to the death of Les Wilson, nor did he represent the Caysons at that time.

While there is no dispute as to those facts, there is dispute, however, as to whether Beasley told the Caysons about the information which he had received from his former client. Beasley testified by deposition that, although he did not tell the Caysons of this information im-

mediately upon being retained, he did tell them about it immediately after their release on bail, which was soon after his being employed and before the trial. He further testified that he discussed it with them on many occasions. The Caysons each testified, however, that Beasley never conveyed the information concerning his former client to them at any time. Obviously, these different versions cannot be reconciled; and the Court is faced with making a determination of which is more credible.

Although Beasley may not be completely disinterested, certainly he does not have the vital interest in this cause that the Caysons have. Therefore, this Court accepts Beasley's testimony as true and finds, as fact, that Beasley told the Caysons shortly after he was retained about the information which he had received from a former client.

Being of the opinion that the information he had received concerning the death of Les Wilson from a former client was within the attorney-client privilege, Beasley did not reveal the identity of his former client nor did he make any specific use at the trial of the Caysons of the information he had received from his former client.

The petitioners contend that there was a conflict of interest on the part of their attorney, which conflict, of itself, amounted to a denial of due process. The petitioners have not attempted to show any specific prejudice which resulted from the conflict. Petitioners cite the case of Holland v. Boles, 225 F.Supp. 863 (N.D.W.Va., 1963), in support of their contention that there is a constitutional infirmity if an attorney represents clients with conflicting interests. That case, however, involved persons who were jointly indicted for murder and who were to be tried together. The conflict in that case was much more apparent and the task of the attorney in reconciling the interests more difficult than in the instant case where the persons with the alleged conflicting interests were not being jointly tried.

A case not involvng a joint trial is Porter v. United States, 298 F.2d 461 (5th Cir., 1962). In that case, there was a motion to vacate sentence under 28 U.S.C.A. § 2255, which alleged that the movant was represented by an attorney on a narcotics charge, while at the same time the attorney represented a narcotics officer, who was a moving figure in the narcotics case against the movant, in a police department proceeding concerning improper narcotic activities. The Court pointed out that the attorney might be faced with the choice of implicating the police officer by urging the defense of entrapment on behalf of the movant, or of protecting the police officer at the expense of the movant by not claiming entrapment. In holding that the motion alleged sufficient facts to require an evidentiary hearing, the Court said, at p. 463:

"The Constitution assures a defendant effective representation by counsel whether the attorney is one of his own choosing or court-appointed. Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others."

That case, however, is to be distinguished from the present case. In this case, the Court has found that Beasley told the Caysons before trial of his representation of a client who was involved in the death of Les Wilson, whereas in the Porter case one of the important factors in the decision was the allegation that the conflict of interest was unknown to the movant. Further, this Court is of the opinion that there was no actual conflict of interest between the Caysons and the former client as far as Beasley was concerned. Beasley never at any time represented the unidentified client with respect to the death of Les Wilson. Also, his representation of this client occurred

from eight to ten years prior to the time he was employed to defend the Caysons on the charge of murder of Les Wilson. Therefore, while Beasley may have had privileged information which he could not disclose, he was under no obligation, either legal or ethical, to defend his unidentified client on the charge of murder of Les Wilson.

In Goodson v. Peyton, 351 F.2d 905 (4th Cir., 1965), the Court held that, in situations where a conflict of interest is possible but, in fact, does not arise, the petitioner must show actual prejudice in order to prevail. In that case, pursuant to custom in Virginia, a prosecuting attorney in one county defended the petitioner on a criminal charge in another county. The Court said although there were occasions where this would create a conflict of interest on the part of the attorney, such as where there was a problem of statutory construction, in the cause before them no conflict of interest was present. The Court then pointed out that nothing was suggested which the trial attorney had done which should not have been done, or which he had not done which should have been done; and, therefore, the petitioner had suffered no actual prejudice.

Similarly, in the instant case, the Caysons have made no attempt to show that they suffered any prejudice. There was no showing that Beasley failed to do something which he should have done, or that he did something he should not have done. As a matter of fact, the evidence indicates quite the opposite. The evidence shows that the Caysons hired their own attorney, an experienced attorney who had tried over fifty capital cases. The attorney then told the Caysons of the information concerning the death of Les Wilson he had received from a person he represented on a different matter many years before; and the Caysons did not object to his continued representation of them. Further, it should be pointed out that the attorney testified that he was not hampered in his defense of the Caysons by having the information which he felt was privileged. He also testified that this information could not have been discovered by individual investigation; and, finally, the attorney was of the opinion that, notwithstanding the attorney-client privilege, the information could not have been gotten before the jury because, as to the attorney, the information was hearsay; and, if called as a witness, the former client would claim his privilege against self-incrimination.

█ Therefore, in view of this Court's finding that there was no actual conflict of interest and that the petitioners were informed of the information the attorney had received from a former client, and in view of the factors outlined above indicating the petitioners were not prejudiced by any conduct or disability on the part of their attorney, this Court is of the opinion that the petitioners were not denied a fair trial because of a conflict of interest on the part of their attorney.

The second ground the petitioners urge is that the trial Judge should have disqualified himself because he was an Assistant State Attorney in the office of the State Attorney which secured the grand jury indictment against the petitioners.

In July, 1958, when the indictment was returned against the Caysons, Judge Fleet was an Assistant State Attorney in the First Judicial Circuit, with residence in Fort Walton Beach in Okaloosa County. The State Attorney for the First Judicial Circuit at that time, Edward F. Wicke, testified that he was sick on the day the grand jury met and did not present the case to them, although he signed the indictment. He stated that he did not have any personal knowledge of who did make the presentment to the grand jury, although he thought it might have been Judge Fleet. Further, he testified that he did not recall any discussion of the Cayson case with Judge Fleet, but he thought he probably did discuss the case with him. Certainly this is a very weak showing of any involvement by Judge Fleet with the case while he was an Assistant State Attorney. Especially is this so when the petitioners could have either called Judge Fleet to testify or taken his

748

deposition, there being no indication that Judge Fleet is dead or otherwise disabled, and thereby make clear what is now left to speculation.

In any event, it is clear that Judge Fleet was not disqualified under the Florida Statutes. The only automatic disqualification is under F.S.A. § 38.01, which provides that where a judge is a party of record he must disqualify himself. F.S.A. § 38.02 provides that a party may file a suggestion of disqualification because the Judge is interested in the result of the cause. F.S.A. § 38.10 provides that a party may file an affidavit of prejudice and thereby disqualify a judge. No suggestion of disqualification or affidavit of prejudice was ever filed to disqualify Judge Fleet.

 Therefore, in order to prevail on this point, the petitioners must show that Judge Fleet's failure to disqualify himself was so fundamentally unfair as to amount to a denial of due process. The petitioners have cited no cases which support this contention. The case of Adams v. United States, 302 F.2d 307 (5th Cir., 1962) indicates the opposite. In that case the movant under 28 U.S.C.A. § 2255 contended that United States District Judge G. Harrold Carswell should have disqualified himself from presiding at the movant's perjury trial because Judge Carswell was acting United States Attorney at the time the movant was tried for a liquor violation, out of which the perjury charge arose. The majority of the Court, in construing 28 U.S.C.A. § 455, held that Judge Carswell was neither of counsel nor had a substantial interest in the case and, therefore, did not have to disqualify himself. Neither the majority nor the dissenting opinion felt required to go further and answer any Constitutional argument that Judge Carswell's failure to disqualify himself amounted to a denial of due process. This indicates that the Fifth Circuit is of the opinion that a judge is not required, as a matter of due process, to disqualify himself from sitting as presiding judge in a cause with which he had only nominal contact as prosecuting at-

torney. The evidence of the extent of Judge Fleet's connection with the petitioners' case while Assistant State Attorney is meager; and while the participation was apparently more than that of Judge Carswell in the Adams case, it certainly does not attain the level of a Constitutional infirmity. The Court is of the opinion that Judge Fleet's failure to disqualify himself is not so fundamentally unfair as to be a denial of due process.

The Court, having found that the petitioners' right to due process under the Fourteenth Amendment of the United States Constitution was not violated by any conflict of interest on the part of their attorney, nor by Judge Fleet's presiding at the trial, it is, therefore, upon consideration,

Ordered, adjudged and decreed:

That the writ of habeas corpus be, and the same is hereby, discharged.