STATE OF WEST VIRGINIA

*v.*

RICHARD HOLLAND

(No. 12418)

Submitted May 11, 1965.        Decided July 13, 1965.

732

*H. G. Williamson, Charles S. Cassis,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *Thomas B. Yost,* Assistant Attorney General, for defendant in error.

BERRY, JUDGE:

The defendant Richard Holland and his sister June Holland Lewis were jointly indicted by the grand jury of the Common Pleas Court of Cabell County, West Virginia in 1952 for the murder of Barney Thompson. The same attorney was employed to represent both defendants, and with the approval of the state, their attorney arranged to have the defendant June Holland Lewis plead guilty to the charge of manslaughter covered as a lesser offense in the indictment and she has served the sentence imposed upon her. The defendant Richard Holland pleaded guilty to first degree murder, and was sentenced to life imprisonment in the West Virginia State Penitentiary.

In 1963 he filed a petition for a writ of habeas corpus *ad subjiciendum* in the United States District Court for the Northern District of West Virginia. On December 16, 1963, the Judge of the United States District Court for the North-

ern District entered an order setting aside and declaring void the sentence imposed upon the defendant Holland by the Common Pleas Court of Cabell County in 1952 but staying the unconditional release of Holland, in order for the State of West Virginia to afford him a new and constitutionally unexceptable trial, apparently on the ground of conflicting interest on the part of the attorney because he represented both defendants. A supplemental order was entered by the United States District Court on December 23, 1963, directing that Holland be released from the West Virginia Penitentiary subject to the right of the State of West Virginia to afford him promptly a new trial.

On March 16, 1964, Holland was tried again on the same indictment returned by the grand jury of the Common Pleas Court of Cabell County in 1952, after the trial court overruled his pleas relating to former jeopardy and the failure to be brought to trial within three terms from the finding of the indictment, in violation of Code, 62-3-21, as amended. He was found guilty by the jury of first degree murder and sentenced to life imprisonment in the West Virginia State Penitentiary. A petition for a writ of error was timely filed in the Circuit Court of Cabell County, West Virginia, and that Court, acting as an Intermediate Appellate Court, refused to grant a writ of error on the ground that the judgment of the Common Pleas Court of Cabell County was plainly right. Upon application to this Court a writ of error and supersedeas was granted on December 18, 1964, and the case was submitted to this Court for decision upon arguments and briefs May 11, 1965.

The assignments of error relied upon by the defendant for reversal by this Court are the overruling of the defendant's special plea of former jeopardy, the overruling of defendant's special plea of discharge for the failure to bring him to trial within three terms from the date the indictment was found and the failure of the State to properly prove the *corpus delicti*. Other assignments relating to the refusal to give certain instructions and the admitting of certain evidence have no merit and were abandoned in the argument and brief of counsel for the defendant.

The pertinent facts adduced at the trial in the Common Pleas Court of Cabell County in 1964 are comparatively simple, uncomplicated, and in effect, uncontradicted. On July 18, 1952, June Holland Lewis, who is at present known as June Early and is a sister of the defendant, met Barney Thompson at a beer tavern in Huntington, West Virginia, and after spending the evening drinking together they went to her mother's home at 821 South High Street in Huntington where they spent the night together in a bedroom.

The next morning they came downstairs and started drinking again. It appears that during this time June Holland Lewis' mother and her brother, as well as a man by the name of Bowen, were present. They ran out of something to drink, and thereafter obtained more and this drinking continued until early afternoon. June Holland Lewis' mother and her brother, the defendant, had been drunk the night before and by the time the crime occurred the mother had "passed out," but the brother was still drinking wine. Sometime before 3 o'clock p.m. June was sitting on the bed between Thompson and Bowen. During this time Thompson was attempting to feel her breast after she had lost her blouse in some manner and she became angry because of these advances being made in front of her mother and brother who, however, apparently at the time, were oblivious of what was going on. She stated that she went into the kitchen and obtained a hammer which she concealed on the bed, and when Thompson continued to make these advances she hit him with the hammer on the head and he fell to the foot of the bed. Then he raised up and hit her on the arm and she struck him again two or three times. While Thompson was trying to get up from the floor she ran out the back door with Bowen who had taken the hammer from her and put it on the steps. She later threw the hammer down an outside toilet in the backyard.

She was cross-examined on a statement which she gave at the police headquarters on the same day in which she was quoted as saying that after Thompson looked up at her "with his eyes" her mother asked her if she had killed him, and she replied she did not know whether she had or not

and that her brother, the defendant, Richard Holland, stated that "If she didn't I will finish him up.", and then stomped Thompson twice so hard she could hear the head bones being crushed. On re-trial she testified that Richard was too drunk to have done the stomping. Also, the same statement shows that upon being asked why she took Barney Thompson up to her mother's home, she gave the following answer: "I took him up to my mother's home because he had money and Richard Holland, I needed some money to pay mother's house rent, Richard Holland had told me to be sure and bring someone that had money when I talked to him on 11th Street and 3rd Avenue July the 18th, 1952." She admitted that it "looks like" her signature on the statement but denied the assertions attributed to her, saying she didn't remember making such.

When the police arrived at the scene around 3 o'clock in the afternoon, they were met by the defendant who stated several times to different officers that he had killed Thompson and referred to him in obscene terms. The officers all stated that the defendant had been drinking but their opinions differed as to whether it was sufficient to arrest him for drunkenness. All were of the opinion, however, that he was capable of carrying on a coherent conversation.

When the officers entered the house they found Thompson's body lying on the floor which had blood on it, with his shirt thrown open, and all of his pockets turned wrong side out. His body had been mutilated, apparently from being stomped and hit with a sharp instrument.

Medical evidence was introduced during the trial to the effect that Thompson's head was badly crushed by two means, one a small sharp, hard object such as a hammer, and the other a large flat object such as a heel or sole of a shoe, either or both of which could have caused his death. Medical evidence was to the effect that a definite heel print on the body of the deceased and other marks that would not likely be made by a hammer were found. The defendant testified at the trial that he had been drinking heavily and did not remember anything about the crime until they charged him with it after he had been taken to jail. He

stated that he did make a statement to his attorney after his arrest and took the blame in order to help his sister. It would appear from the evidence introduced at the trial of this case that both Richard Holland and his sister June Holland Lewis, who were jointly indicted for the murder of Barney Thompson, could have been found guilty by a jury of first degree murder as charged had they not entered pleas at the suggestion of their attorney. June Holland Lewis was allowed to plead guilty to the lesser offense of manslaughter and has now served her sentence. Although the defendant Richard Holland took the blame initially for the murder which resulted in the acceptance of June Holland Lewis' plea to the lesser offense, she now attempts to take the blame in order to relieve her brother of the charge of murder at the second trial.

The defendant, on his own initiative, instituted the habeas corpus proceeding in the United States District Court in the Northern District of West Virginia, alleging that his constitutional rights had been violated, and that therefore his conviction and sentence were void. The District Judge granted the prayer of his petition and held the conviction and sentence were void and released the defendant, subject to the right of the State of West Virginia to promptly afford him a new trial.

The constitutional protection against double jeopardy may be waived by an accused, and where a new trial is obtained through his own initiative he cannot claim that the former proceedings constituted prior jeopardy, since the plea of guilty has been held to be null and void and he was consequently not in legal jeopardy at the time it was entered. Anno. 75 A. L. R. 2d 683, 700.

It has long been established that if a defendant in a criminal case appeals his conviction to a higher court and the conviction is reversed, the double jeopardy is waived and he can be tried again on the same indictment. 15 Am. Jur., Criminal Law, §427; State v. Cross, 44 W. Va. 315, 29 S. E. 527. See State v. Burke, 130 W. Va. 64, 42 S. E. 2d 544.

It is likewise held that where there is a void verdict, or a mistrial where there is a manifest necessity, and the jury

is discharged in such case, the trial is a nullity and there is no bar to further prosecution. *State ex rel. Woods* v. *Reed,* 93 W. Va. 150, 116 S. E. 138; *State* v. *Shelton,* 116 W. Va. 75, 178 S. E. 633. The rule that double jeopardy may be pleaded in bar at a second trial is based on a lawful acquittal or conviction, and if the acquittal or conviction is not lawful, the defendant was never in jeopardy. 15 Am. Jur., Criminal Law, §369. This matter is succinctly covered in 1 Wharton's Criminal Law and Procedure, (1957), §139 at page 313, wherein it is stated: "One who has secured his release from imprisonment in a criminal case through a habeas corpus proceeding upon the ground that the judgment and sentence were unauthorized and void because founded on an unconstitutional indeterminate sentence law cannot defeat a subsequent prosecution for the same offense on the ground of former jeopardy."

Where a conviction and sentence are set aside and held to be void by motion of the defendant in the trial court, by appeal, or by habeas corpus proceeding, it has been held that double jeopardy is not applicable because in each instance it is waived and there is no inhibition to another trial for the same offense. In *re Smigelski,* 30 N. J. 513, 154 A. 2d 1; *State* v. *Boyles,* 37 Del. 223, 181 A. 362; *State* v. *Dehler,* 257 Minn. 549, 102 N. W. 2d 696, 89 A. L. R. 2d 496; *State ex rel. Cacciatore* v. *Drumright,* (Fla.), 156 So. 721, 97 A. L. R. 154. Courts sometimes refer to the first proceeding as "abortive" or any possible former jeopardy as "destroyed."

It has been recently stated by this Court that if a trial is void the defendant was never in jeopardy in that trial. See *State ex rel. Lovejoy* v. *Skeen,* 138 W. Va. 901, 909, 78 S. E. 2d 456, (Cert. denied 349 U. S. 940, 75 S. Ct. 786, 99 L. Ed. 1268).

In the habeas corpus cases in the Federal Courts wherein the petitioner is released because of a void conviction and sentence, it is indicated in each instance that the plea of former jeopardy is not available because the petitioner is released with the right of the state to re-try him. *Yaeger* v. *Director of Dept. of Welfare and Institutions,* 319 F. 2d 771,

(Cert. denied 375 U. S. 906, 84 S. Ct. 198, 11 L. Ed. 2d 146); *United States* v. *Randolph,* 259 F. 2d 215, (C. C. A. 7); *Rogers* v. *Richmond,* 365 U. S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760; *Irvin* v. *Dowd,* 366 U. S. 717, 81A S. Ct. 1639, 6 L. Ed. 2d 751; *Reck* v. *Pate,* 367 U. S. 433, 81 S. Ct. 1541, 6 L. Ed. 2d 948.

It is clear from the authorities cited herein that the plea of former jeopardy is not available in this case, because the defendant set in motion the proceedings which resulted in his plea of guilty and sentence being held void by the United States District Court of the Northern District of West Virginia, and no appeal was taken from that Court in connection therewith. Therefore, the assignment of error on this ground is not well taken.

We are also of the opinion that the assignment of error, based on Code 62-3-21, as amended, requiring that an accused be tried within three terms of court from the finding of the indictment, with certain exceptions, is not well taken in the case at bar. The statute in question is not applicable to the case presented here. When the defendant entered his plea of guilty in 1952 it was within three terms of the finding of the indictment and he could not have been tried again while he was confined in the penitentiary, until, on his own initiative, he instituted a habeas corpus proceeding and had his plea of guilty and sentence held void with the right of the State of West Virginia to re-try him. The statute in question has never been applicable where a defendant appeals his conviction and sentence to an appellate court and it is set aside and remanded for a new trial, either because there was reversible error in the trial or the trial was void. *State* v. *McIntosh,* 82 W. Va. 483, 96 S. E. 79; *State* v. *Wiseman,* 141 W. Va. 726, 92 S. E. 2d 910; *State* v. *Loveless,* 142 W. Va. 809, 98 S. E. 2d 773.

When the defendant instituted the proceedings and had his conviction and sentence held void he waived the provisions of the statute to be tried within three terms of the finding of the indictment and made it inapplicable to the case at bar; and by accepting the benefit of having his conviction and sentence set aside and held for naught he must

also accept any disadvantage which may accrue therefrom. See *State* v. *Dehler,* 257 Minn. 549, 102 N. W. 2d 696, 89 A. L. R. 2d 496.

The assignment of error with regard to the failure of the state to prove the *corpus delicti* is also not well taken by virtue of the facts contained in the record of this case. The evidence is uncontradicted that Barney Thompson was killed by violent acts which clearly indicate the homicide was accomplished in a criminal manner. It is only necessary to have the occurrence, such as homicide, caused by some person's criminality to sufficiently prove the *corpus delicti.* VII Wigmore on Evidence, 3rd Ed. §2072. This was certainly sufficiently proved in the case presented here, without any admissions by the defendant, and the other evidence then connected the defendant with the crime in order to support the jury's verdict of guilty. The evidence is also clear that Thompson was not dead after the original co-defendant June Holland Lewis hit him on the head, because by her own testimony she said he looked at her and struck her after she hit him. Although admissions of the accused can be proper evidence tending to prove the *corpus delicti, State* v. *Hall,* 31 W. Va. 505, 7 S. E. 422, the essential elements to prove *corpus delicti* were proved in the instant case independently of defendant's statements, and the admissions of the defendant then tended to prove the guilt of the defendant Richard Holland as charged in the indictment.

For the reasons stated herein, the judgments of the Circuit Court of Cabell County and the Court of Common Pleas of Cabell County are affirmed.

*Affirmed.*