Richard HOLLAND, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 697–E.

United States District Court
N. D. West Virginia.

Feb. 15, 1967.

Bonn Brown, Elkins, W. Va., for petitioner.

Fred M. Frisk, Jr., Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner, Richard Holland, is now serving a life sentence in the West Virginia Penitentiary, following a jury verdict convicting him of first degree murder. The conviction and sentence occurred in 1964 in the Common Pleas Court of Cabell County, West Virginia.[1]

Holland raised six claims for federal habeas corpus relief in his original and amended petition. Since a number of them present factual issues, this Court appointed counsel for Petitioner and held a plenary hearing on January 18, 1967.

■ Holland first claims that "fraud" and "collusion" between his trial counsel and the state took place, as evidenced by the claimed failure of the two defense attorneys to argue all points of alleged trial error on appeal. At the hearing it became apparent that the references to "fraud" and "collusion" in the petition were reckless claims completely without foundation.[2] The claim that some points were not pressed on appeal was based on Holland's learning that not all trial errors assigned were *orally* argued before the West Virginia Supreme Court of Appeals.[3] His trial counsel explained in this Court that, due to the limited time available for oral argument, not all points were covered orally, but that clearly no point of assigned error was ever waived or abandoned. This Court agrees and rejects the claim.

■ Holland next complains that oral and written admissions, made to police without having been warned of his constitutional rights, were introduced at his trial. Holland had no right to such warnings regarding admissions made back in 1952 and introduced at his 1964 trial, since Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) has been held to be non-retroactive. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

1. An earlier conviction and sentence imposed for the same offense was voided by this Court on the grounds that Petitioner had been denied the effective assistance of counsel, where the same attorney represented both Petitioner and his sister in a situation where the conflict of interests was apparent. Holland v. Boles, 225 F.Supp. 863 (N.D.W.Va.1963).

2. This Court views such conclusory allegations with absolute disapproval. Petitioner further revealed his predilection for falsity at this Court's hearing by contradicting his testimony at his 1964 state court trial. In the state trial court Holland testified that he was drunk at the time of the killing and had no memory of what transpired. At the hearing before this Court he denied his drunkenness and lack of memory, and unconvincingly attempted to excuse his earlier state court testimony by claiming he was nervous and confused at the state trial. However, one of his two state trial court defense attorneys advises that throughout the period he represented Petitioner, Holland had steadfastly maintained that he was drunk and had no memory of the killing.

3. The appeal was denied on July 13, 1965. State v. Holland, 149 W.Va. 731, 143 S.E. 2d 148.

■ Although Holland did not specifically challenge the voluntariness of the statements, other than to claim they were made without the benefit of police warnings as to his constitutional rights, sufficient evidence was adduced at the plenary hearing in this Court to warrant a finding that all the statements of the Petitioner which were introduced at his trial were in fact voluntary.

Petitioner freely admitted that the oral admissions made to police at the scene of the killing were voluntary. In fact, they were volunteered by Holland almost instantly, prior to questioning of any kind by the police, and as soon as they arrived near the crime scene. As to the written statement, Holland made no claim that there had been any police coercion. Though he did indicate that the statement had been given and signed about twelve hours after the arrest, at about 4:00 a. m., he complained of no mistreatment during this detention period. Further, he contradicted his state court trial testimony here [4] by insisting that he was not drunk at the time he made the written statements. He did testify, although somewhat unconvincingly, that his personal motive for signing the statement was to protect his sister. No suggestion was made in this Court that any threats were made by police or that any promises of leniency towards Holland's sister had been given. On these facts, the Court has no hesitancy in finding that all of the admissions of the Petitioner which were admitted at trial were, in fact, made voluntarily.

■■ Holland's third complaint, that he was refused a transcript which he requested, is no ground for relief in view of the circumstances under which the request was made. At the hearing Holland claimed his request was denied on July 25, 1965. He admitted that his attorneys did procure a transcript with which they prosecuted his appeal. That appeal was denied by the West Virginia Supreme Court of Appeals on July 13, 1965. Clearly, Holland was not denied a tran-

script for appeal guaranteed him as an indigent by Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The state has no duty to provide extra transcripts to a prisoner where he has already been furnished one which he has, in fact, used in perfecting an appeal.

■ Holland's fourth claim requires little discussion. His complaint, that his attorney refused to show that the footprints on the deceased victim's chest were not Holland's, raises no suggestion that a substantial defense was overlooked or abandoned. Not only is it clear that the state made no effort to prove its case by asserting the footprints were Holland's—indeed, it is hard to imagine that such proof could ever have been possible, but, as his attorney testified, it would have been completely impossible to expect to prove the footprints belonged to another when the corpse had been interred for over twelve years.

For his fifth claim, Holland states that prejudicial publicity in the news media deprived him of his right to a fair trial. In support of this claim Holland stated that he was referred to as a "stomp slayer" on about ten occasions in the newspapers and about once a week on radio and television during the four month period prior to his trial. Holland admitted that his attorneys had questioned prospective jurors about their exposure to this publicity. No claim was made that any comments by the prosecution contributed to this publicity. Holland's attorney testified that he felt the publicity was not unduly sensational and that he saw no need to request a change of venue.

■■ On these meager facts, there is clearly no basis for finding that the totality of circumstances raises the probability of prejudice, relieving a petitioner from the burden of showing identifiable prejudice. See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Holland has not produced a shred of evidence which would

4. See Note 2, supra.

warrant a finding of prejudice. This Court therefore finds that press publicity did not interfere with his right to a fair trial.

 Holland's final claim is that he received no credit for the eleven years served following his 1952 conviction, later overturned by this Court in 1963. Respondent admits this fact but denies its constitutional significance. We disagree with Respondent and find this claim has merit.

This Court agrees with the District Court in Patton v. State of North Carolina, 256 F.Supp. 225, 236 (W.D.N. C.1966), that:

> * * * denial of credit * * * for time served while in the de facto status of state prisoner is so fundamentally unfair as to constitute a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution.

The fact that Holland is serving a life sentence does not eliminate resulting prejudice, since the failure to give credit has the effect of substantially delaying Holland's eligibility for parole.[5]

Although, as we have said, credit should have been extended Holland at his 1964 sentencing, this Court is not persuaded that the mechanical process of resentencing is required. This administrative matter can be attended to by Respondent's action. Holland's present commitment records should reflect the length of sentence served originally, prior to his habeas corpus release.

Accordingly, an order will be entered requiring that credit for time served on the 1952 conviction must be extended to Petitioner. Respondent will be given ten days within which to advise this Court whether this can be done by his authority or whether resentencing will be required. In the latter event, the state will be given an additional period of time to be definitely set by this Court within which to resentence Petitioner. If Petitioner is not granted this credit by either method, he will be entitled to his release.

---

5. Prior to the abolition in 1965 of the death penalty, still in effect when Holland was retried in 1964, all prisoners given life sentences were eligible for parole. For those with two previous felony convictions, it was required that they serve fifteen years before they became eligible; in other cases, prisoners were eligible after having served ten years. West Virginia Code, Chapter 62, Article 12, Section 13 (Michie's ed. 1966). The record is unclear whether Holland, if properly given credit, would already be eligible, having served well over ten years. In any event, even if he is a thrice-convicted felon, he will soon have served fifteen years and thus be eligible for parole.