STATE OF WEST VIRGINIA

*v.*

WILLIAM JOHN CUNNINGHAM

(No. 13716)

Decided July 12, 1977.

*William C. Garrett* for plaintiff-in-error.

*Chauncey H. Browning,* Attorney General, *William D. Highland,* Assistant Attorney General, for defendant-in-error.

McGRAW, JUSTICE:

In plea bargaining arrangements in the Circuit Court of Nicholas County, William John Cunningham, on June 30, 1975, entered a guilty plea to a charge of unarmed robbery, a lesser offense embraced in an indictment for the armed robbery of Orval Hoover on the ____ day of September, 1974. On the guilty plea, the trial court denied probation and sentenced the defendant to serve an indeterminate sentence of from five to eighteen years in the state penitentiary. W. Va. Code, 61-2-12. The trial court's two judgment orders of August 20, 1975, are before the Court for review on a writ of error and supersedeas granted May 17, 1976. By order of June 16, 1976, the trial court denied bail pending appeal.

Earlier, on November 12, 1974, two felony indictments were returned against defendant Cunningham, one charging the robbery of Orval Hoover and the other charging felonious assault on Orval Hoover, both involving the same episode occurring on the ____ day of September, 1974, covered in the armed robbery indictment to which the defendant entered a guilty plea on June 30, 1975. On the robbery indictment of November 12, 1974, defendant was tried to a jury on February 24 and 25, 1975, and found "guilty of armed robbery as charged in the within indictment." By order entered April 17, 1975, the trial court denied defendant's motion to set the jury verdict aside and to award him a new trial. In that order the court sentenced defendant to life imprison-

ment in the state penitentiary. Later, by order of May 8, 1975, the trial court reconsidered defendant's motion and granted him a new trial. On May 12, 1975, the State moved a *nolle prosequi* be entered on the November 12, 1974, robbery indictment. By order of May 16, 1975, the State's motion was granted and the cause was "ordered stricken from the docket."

On May 22, 1975, the grand jury for Nicholas County returned a new robbery indictment against defendant— the indictment on which he is now serving a sentence of from five to eighteen years on his guilty plea to a charge of unarmed robbery as a lesser offense embraced in the new robbery indictment.

While "armed robbery" and "unarmed robbery" are not appropriately descriptive of the two degrees of robbery embraced in the statute, W. Va. Code, 61-2-12, it will be helpful and permissible in this opinion to employ the terms from time to time in harmony with the record as presented for review. *State ex rel. Vandal v. Adams*, 145 W. Va. 566, 569, 115 S.E.2d 489 (1960).

In his brief, the defendant cites three errors of the trial court as bases for reversal of his conviction. He states:

"1. The trial court erred in dismissing the indictment for unarmed robbery against the defendant where the motion to dismiss was made by the State without first giving defendant notice and an opportunity to be heard.

"2. The trial court erred in overruling defendant's plea in bar made in defense to the armed robbery indictment.

"3. The trial court erred in accepting defendant's plea of guilty to the crime of unarmed robbery without first following certain procedures to determine if it was knowingly, voluntarily and intelligently made."

The first trial court error cited by defendant, dismissal of the robbery indictment without notice to the defendant or opportunity to be heard thereon, is without merit.

By order of May 8, 1975, the trial court, on defendant's motion, had set the verdict aside and had granted a new trial on the indictment. Some days later the State moved that a *nolle prosequi* be entered on the indictment, the motion was sustained, and the trial court, by order of May 16, 1975, removed the cause from the docket. Defendant's brief cites W. Va. Code, 62-3-2, which provides that a "person indicted for felony shall be personally present during the trial therefor." He cites Local Court Rule No. 18, applicable in the Circuit Court of Nicholas County, requiring proposed orders to be submitted to opposing counsel before presentation to the court for entry. Several cases are cited affirming the statute law that the defendant in a felony case must be present during every stage of his trial. Here the trial had ended and the court had voided, on defendant's motion, the trial verdict and judgment. The decision to prosecute or not to prosecute is essentially an executive decision. At common law approval of the court was not required for dismissal of an indictment. Rule 48, Federal Rules of Criminal Procedure, as amended, now allows dismissal with leave of court. The leave of court requirement may be "intended to prevent harassment of a defendant by charging, dismissing and without placing a defendant in jeopardy." 3 Wright, *Federal Practice and Procedure,* § 812 (1969). For many years the practice in West Virginia has required the consent of the court for dismissal of indictments. *Denham v. Robinson,* 72 W. Va. 243, 77 S.E. 970 (1913). In his brief, the defendant reasons that when the court dismissed the indictment on the State's motion without notice to the defendant or an opportunity to be heard thereon, the "*ex parte* proceeding was in violation of defendant's right of due process of law and in violation of W. Va. Code, 62-3-2." In *State v. Burke,* 130 W. Va. 64, 72, 42 S.E.2d 544 (1947), the Court stated:

> ". . . When a defendant has been convicted and a new trial has been granted him, the prosecution may, with the consent of the court, enter a *nolle prosequi* without prejudice to a new indictment of information. . . ."

We adhere to this ruling and find no error in the trial court's dismissal of the indictment.

Defendant further contends that "once the State moved to nolle prosequi defendant's indictment charging him with unarmed robbery, she was barred from further prosecuting defendant for the crime of armed robbery." Defendant's position is based on two basic propositions— that further prosecution on the new indictment would violate double jeopardy and due process of law provisions of the constitutions of the United States and of West Virginia. *Benton v. Maryland,* 395 U.S. 784 (1969).

Among cases cited by defendant in support of his double jeopardy arguments in *State v. Holland,* 149 W. Va. 731, 143 S.E.2d (1965). The second point of the syllabus of that decision holds"

> "Where a conviction and sentence are set aside and held to be void by motion of the defendant in the trial court, by an appeal, or by habeas corpus proceedings, double jeopardy is not applicable because in each instance it is waived and there is no inhibition to another trial for the same offense."

He also cites *State v. Burke, supra,* the syllabus point of which reads:

> "When an accused has been tried and convicted by a justice of the peace on a valid warrant and the judgment of conviction is vacated and annulled by an appeal taken by him to the criminal court of the county, and while such appeal is pending and before it is dismissed, he is indicted for the same offense and is tried and convicted in that court, the provision of the Constitution of this State, Article III, Section 5, that no person, in any criminal case, shall be twice put in jeopardy of life or liberty for the same offense does not apply; and in such case the accused may not plead his conviction on the warrant in bar of the prosecution for the same offense in the trial on the indictment."

Defendant reasons that the dismissed indictment was for unarmed robbery and the new indictment is for armed robbery, a different offense. As above noted, the West Virginia statute on robbery, W. Va. Code, 61-2-12, does not delineate degrees of the crime on the basis of armed and unarmed robbery. The first sentence of the statute is one degree of robbery, with a sentence of from ten years to life imprisonment, and the second sentence related to another degree of the crime, with a sentence of from five to eighteen years. The first paragraph of the statute, embracing the two sentences, follows:

"If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years. If any person commit, or attempt to commit, a robbery in any other mode or by any other means, except as provided for in the succeeding paragraph of this section, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than five nor more than eighteen years."

The statutory form of the robbery indictment, W. Va. Code, 62-9-6, refers to armed situations, but does not define degrees of robbery. The statutory form is as follows:

"An indictment for robbery shall be sufficient if it be in form, tenor or effect as follows (after following the form in section one [§ 62-9-1]:

That A ......, on the ...... day of ........, nineteen ......, in the said county of ......, being armed with a dangerous and deadly weapon (if not armed, leave out allegation of being armed) in and upon one B ........ an assault did feloniously make, and him, the said B ...... did then and there feloniously put in bodily fear, and (here set out the articles of money stolen, as the case may be), all the property of the said B ......, and lawfully in his control and custody,

from the person of the said B ......, and against his will, then and there feloniously and violently did steal, take and carry away, against the peace and dignity of the State."

The dismissed indictment, returned November 12, 1974, considered by defendant to be for unarmed robbery, reads as follows:

STATE OF WEST VIRGINIA, COUNTY OF NICHOLAS, TO-WIT: In the Circuit Court Thereof the Grand Jurors of the State of West Virginia, in and for the body of the County of Nicholas, upon their oaths present that William John Cunningham on the _____ day of September _____, 1974, and before the finding of this indictment in the said County of Nicholas, in and upon one Orval Hoover an assault did feloniously make, and then the said Orval Hoover did then and there feloniously put in bodily fear and fifteen dollars ($15.00) in United States currency, all the property of the said Orval Hoover, and lawfully in his control and custody, from the person of the said Orval Hoover, and against his will, then and there feloniously and violently did steal, take and carry away against the peace and dignity of the State. Found upon the testimony of Tpr. O. S. Adkins, sworn in open Court and sent before the Grand Jury this 12th day of November, 1974.

/s/ J. M. Tully

_____

Prosecuting Attorney

The new indictment, returned May 2, 1975, is in the following language:

"STATE OF WEST VIRGINIA, COUNTY OF NICHOLAS, TO-WIT: In the Circuit Court Thereof The Grand Jurors of the State of West Virginia, in and for the body of the County of Nicholas, upon their oaths present that William John Cunningham on the _____ day of September, 1974, and before the finding in this indictment in the said County of Nicholas, in and upon one Orval Hoover an assault did unlawfully and feloniously

make, and him the said Orval Hoover, unlawfully and feloniously did strike, beat and do violence to his person, and him, the said Orval Hoover, then and there feloniously put in bodily fear and fifteen dollars ($15.00) in United States currency, all the property of the said Orval Hoover, and lawfully in his control and custody, from the person of the said Orval Hoover, and against his will, then and there unlawfully, feloniously and violently did steal, take and carry away, against the peace and dignity of the State. Found upon the testimony of Tpr. O. S. Adkins, sworn in open Court and sent before the Grand Jury this 22nd day of May, 1975.

/s/ J. M. Tully

Prosecuting Attorney

The interpretation and application of the robbery statute were considered by the Court in *State ex rel. Vascovich v. Skeen,* 138 W. Va. 417, 76 S.E.2d 283 (1953), prior to the 1961 amendment to the first paragraph of the statute which added words at the end of the second sentence limiting the imprisonment to not more than eighteen years. Otherwise the language of the statute is the same as interpreted and applied in *State ex rel. Vascovich v. Skeen, supra.* In that case syllabus, point three holds:

"Under Section 12, Article 2, Chapter 28, Acts of the Legislature, 1939, amending and reenacting Code, 61-2-12, an indictment which charges that the accused in and upon a named person 'an assault did feloniously make and her, [the named person] did then and there feloniously put in bodily fear, and . . . , then and there feloniously and violently did attempt to steal, take and carry away', certain personal property described in the indictment, not belonging to or in the custody of any bank, is an indictment based on the provision of the first sentence of Section 12, and effectively charges the accused with the offense of attempting to commit robbery, the penalty for which is confinement in the penitentiary for not less than ten years."

In consideration of the language of the robbery statute, the statutory form of the robbery indictment, and the Court's reasoned analysis and conclusion in the *Vascovich* case, *supra*, we hold that the language of the dismissed indictment in this case charged the robbery crime in the first sentence of the statute, W. Va. Code, 61-2-12, although the charging is somewhat inartfully accomplished. *Young v. Boles*, 343 F.2d 136 (4th Cir. 1965). It follows, therefore, that the trial court's instruction that one of the jury's possible verdicts was to find the accused guilty of armed robbery was not in error and that the jury's verdict finding the defendant "guilty of armed robbery as charged in the within indictment" was consistent with the indictment and instructions of the court. On that verdict the court imposed a life sentence but, on defendant's motion, the verdict was set aside and a new trial was awarded. Later, when the November 12, 1974, indictment was dismissed and a new indictment was returned on May 22, 1975, charging the same offense with the same penalty provisions, but in somewhat different language, defendant was not threatened by double jeopardy or due process of law violations. *United States v. Ball*, 163 U.S. 662 (1896). The new indictment charged the same offense and, in its application and through plea bargaining, defendant's plea of guilty to the lesser offense, under the second sentence of the robbery statute, was accepted and a sentence of from five to eighteen years was imposed. The trial court's sentencing order of August 20, 1975, referred to the crime as unarmed robbery, imposed the sentence, and allowed time credit to the defendant for the 150 days he had been held in jail pending trial and disposition of his case.

Defendant relies on *Blackledge v. Perry*, 417 U.S. 21 (1974), as basis for his position that he had been denied due process of law. He reasons he sought an appeal of his conviction on an unarmed robbery indictment and, when his conviction on that indictment was vacated on his motion, he was penalized by the State's return of an armed robbery indictment, a greater offense. Our forego-

ing analyses and findings have resulted in the conclusion that the offense charged in the first and second indictment are the same. In the *Perry* case, *supra*, the defendant had been prosecuted on a misdemeanor charge. While his appeal thereon was pending without determination, he was indicted for a felony on the same factual situation and, on his guilty plea, was sentenced to serve five to seven years in prison. The teachings of the *Perry* case, on facts different from those in the present case, relate greatly to due process rights in an atmosphere involving possible retaliation and vindictiveness on the part of the prosecution. In the present case, the Court finds that the criminal offenses in the two indictments are the same but charged in somewhat different language. The facts disclose that the defendant's life sentence under the earlier indictment has been vacated and that defendant has been allowed to enter a guilty plea to a lesser offense under the second indictment on which a sentence of from five to eighteen years, with credit for time held in jail, has been imposed. We find no denial of due process of law in the proceedings.

In his brief on this appeal, counsel for defendant states that "defendant's plea of guilty to the crime of unarmed robbery may not have been knowingly, voluntarily, and intelligently made". He argues that the trial court's procedures on accepting the guilty plea do not measure up to the standards set forth in *Call v. McKenzie*, ____ W. Va. ____, 220 S.E.2d 665 (1975). The record discloses that defendant's plea was entered June 30, 1975. The *Call* opinion was announced December 16, 1975. The trial court did not have the benefit of the teachings of this Court's opinion. While the Court did not make the teachings mandatory, they should be sedulously followed, particularly in the absence of a state rule, comparable to Rule II, Federal Rules of Criminal Procedure, detailing the procedures required in accepting a guilty plea. However, in the present case, the seven pages of the record detailing the advices and inquiries of the trial court to defendant relating to his guilty plea are found to satisfy the requirements of the *Call* opinion

and of *Boykin v. Alabama*, 395 U.S. 238 (1969), and to satisfy this Court that the plea of guilty was knowingly, voluntarily and intelligently made.

Upon review and consideration of the record, together with the briefs and arguments of counsel and the relevant and pertinent principles of law involved in and controlling a determination of this cause, we find no error in the trial court proceedings and accordingly affirm the judgment orders of the Circuit Court of Nicholas County entered in this Case on August 20, 1975.

*Affirmed.*

MILLER, JUSTICE, *dissenting:*

I dissent from the majority opinion for several reasons.

First, I believe that the majority, whether it realizes it or not, has now abolished any distinction that may have existed between armed robbery and unarmed robbery. The majority states, "While 'armed robbery' and 'unarmed robbery' are not appropriately descriptive of the two degrees of robbery embraced in the statute, W. Va. Code, 61-2-12, . . ."

If the terms "armed robbery" and "unarmed robbery" are not "appropriately descriptive" of the crime, they have certainly been so used over a long period of time by this Court. *See, e.g., State ex rel. Mundy v. Boles*, 148 W. Va. 752, 137 S.E.2d 240 (1964); *State ex rel. Vandal v. Adams*, 145 W. Va. 566, 115 S.E.2d 489 (1960); *State v. Fulks*, 114 W. Va. 785, 173 S.E. 888 (1934).

The first sentence of W. Va. Code, 61-2-12, describes the manner by which an armed robbery can be committed. The initial indictment brought against the defendant in this case did not charge the crime of armed robbery since it did not contain any of the action words set out in the first sentence of W. Va. Code, 61-2-12: "partial strangulation or suffocation," "by striking or beating," "by other violence to the person," "by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever."

The word "assault" is not contained in the first sentence. An assault is, of course, the threat to do violence as distinguished from the actual doing of violence, which is a battery. *State v. Hatfield,* 48 W. Va. 561, 37 S.E. 626 (1900); 2A Michie's Jurisprudence *Assault and Battery* §§ 2 and 3. If there is any set of facts which might have constituted an unarmed robbery prior to today's case, it would have been a robbery by assault, that is, by threatening violence. This is the theory on which the statutory indictment form distinguishes the two offenses. W. Va. Code, 62-9-1.

I recognize that *State ex rel. Vascovich v. Skeen,* 138 W. Va. 417, 76 S.E.2d 283 (1953), is the underpinning of the majority's case. However, *Vascovich* dealt with an attempt to commit robbery and recognized that both the Attorney General and petitioner's counsel considered the indictment in that case to be for an attempt to commit unarmed robbery.

The Court in *Vascovich,* 138 W. Va. at 421, disposed of the matter by stating that the words in the indictment " '. . . feloniously put in bodily fear, . . . .' " charged that the defendant made a *felonious assault.* It then concluded that the indictment satisfied the wording of the first sentence of the robbery statute since a felonious assault is ". . . 'by striking or beating, or by other violence to the person,' . . . ." The indictment did not contain these latter words.

It is erroneous to treat the threat of bodily fear, which is the crime of assault, with the actual doing of bodily harm by striking or beating, as being the same act. Once the line between the threat of violence and the actual doing of violence is erased, there is no distinction between the two crimes as set out in the first paragraph of the robbery statute. W. Va. Code, 61-2-12.

Contrary to the suggestion in *Vascovich, supra,* there is no such crime as felonious assault in this State. Notwithstanding the captions, which have no legal effect, in Michie's W. Va. Code, 61-2-9, -10 and -12, where the word

"assault" is used, nowhere in the body of any of these statutes is the word "assault" to be found.

The phrase "felonious assault", as used in *Vascovich, supra,* has no reference to any crime known in this State, and to state that it does is pure error. The phrase comes into use as a result of the necessity of having to use the word "felony" in a felony indictment. *State ex rel. Vandal v. Adams, supra.* I see nothing to be gained by perpetuating the error made in *Vascovich.*

My second ground of dissent centers on the fact that the majority has missed an opportunity to clarify the meaning of the robbery statute, W. Va. Code, 61-2-12. Prior to the 1931 revision, this statute was as follows:

> "If any person commit robbery, being armed with a dangerous weapon, he shall be confined in the penitentiary not less than ten years, if not so armed, he shall be confined therein not less than five years." [W. Va. Code, ch. 144 § 12 (1923)]

This Court has stated in connection with this statute that it was not designed to define the crime of robbery, but to prescribe the punishment. *Franklin and Ponto v. Brown,* 73 W. Va. 727, 81 S.E. 405 (1914). The statute did delineate between the crimes of armed and unarmed robbery. In this sense the statute was somewhat definitional, because two classes of robbery were set up with two distinct punishments. The statutory framework became of some importance in order to determine the appropriate penalty.

When the 1931 revision was made to the robbery statute, which is set out in the first paragraph of the present statute, it became even more definitional.[1] It is

---

[1] W. Va. Code, 61-2-12 (1931):

"If any person commit robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years. If any person commit a robbery in any other mode or by any other means, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than five years."

readily apparent that the revision was designed to set forth or define those overt acts against the victim which are deemed to be of a more aggravated nature and which will result in a more severe punishment. These are set out in the first sentence of the statute. Robbery committed in any other mode was deemed to be less serious and therefore carried the lighter penalty, as found in the second sentence of the statute.

The statutory scheme seems quite obvious and it is apparent that a robbery accomplished with actual violence on the person or by the use of a firearm or other deadly weapon falls within the first sentence definition. It is commonly called an armed robbery. On the other hand, if the robbery is accomplished through threat of bodily harm and without the use of firearm or other deadly weapon, it is unarmed robbery.

The Revisers' Notes to the 1931 Code indicate that the revised statute was to define the crime of robbery.[2] This statement may have been a bit broad, since the statute does not purport to set out all the elements of common law robbery.[3] Yet, it cannot be argued that the revised statute did expand the definition of what was known as armed robbery.

At common law there were no gradations in the crime of robbery. This has come about as a result of legislation,[4] which has brought the terms armed and unarmed robbery into use. One suspects such legislation mainly resulted from a desire to make the punishment more compatible with the nature of the crime.

All of this may appear somewhat arcane until we turn to the facts of this case. The initial indictment was con-

---

[2] Revisers' Note, 1931 W. Va. Code, 61-2-12:

"Section 12, c. 144, W. Va. Code, 1923, is amended to define robbery. This statute is approved, in practically the same form, in Virginia and other states."

[3] "It is the felonious and forcible taking from the person of another, of goods or money of any value, by violence or by putting him in fear." *State v. Fulks,* 114 W. Va. 785, 173 S.E. 888 (1934).

[4] 2 Wharton's, *Criminal Law and Procedure* §545, *et seq.* (Anderson's ed. 1957.

ceived to be for unarmed robbery. It was on this basis that the trial court set the jury verdict of armed robbery aside.

This explains why the prosecuting attorney had the defendant re-indicted for armed robbery. The difference in the language of the two indictments, which is set out in the majority opinion, compels the conclusion that even the prosecutor knew his first indictment was for unarmed robbery. Why else would he have bothered to re-indict if he thought his first indictment was a valid armed robbery indictment?

On appeal, the State does not seriously argue that the first indictment was for armed robbery, as evidenced from its brief:

> "Stated in another way, Cunningham's premise is that a retrial obtained at the defendant's behest must proceed on the basis of the original, defective indictment—defective in the sense that it failed to charge sufficiently the offense of which he was subsequently convicted—and not on the basis of a new indictment sufficing to charge that offense."

The majority fails to consider the constitutional ramifications of its opinion. If a person can be indicted for armed robbery under language such as contained in the original indictment, "... that William John Cunningham ... in and upon one Orval Hoover an assault did feloniously make, and ... did then and there feloniously put in bodily fear ...", the same language would just as well serve for unarmed robbery.[5]

---

[5] One has only to read the following cases which involved the validity of the sentence on a robbery conviction to realize the confusion that occurs in the trial courts as between armed and unarmed robbery indictments. Today's majority opinion will not help this situation. *State ex rel. Nicholson v. Boles*, 148 W. Va. 229, 134 S.E.2d 576 (1964); *State ex rel. Truslow v. Boles*, 148 W. Va. 707, 137 S.E. 2d 235 (1964); *State ex rel. Facemyer v. Boles*, 148 W. Va. 702, 137 S.E.2d 237 (1964); *State ex rel. Mundy v. Boles*, 148 W. Va. 752, 137 S.E.2d 240 (1964); *State ex rel. Burdette v. Boles*, 148 W. Va. 758, 137 S.E.2d 244 (1964).

The constitutional vice in permitting this type of procedure lies in the fact that it does not plainly inform the defendant of the nature of the offense charged. *West Virginia Constitution*, Article III, Section 14. *State ex rel. Cogar v. Kidd,* ___ W. Va. ___, 234 S.E.2d 899, 902 (1977).

The specific error in this case arose when the State abandoned its initial indictment for unarmed robbery after the trial court had awarded the defendant a new trial. The State could not re-indict for armed robbery under principles of due process set out in *Blackledge v. Perry,* 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098 (1974).

In that case the defendant Perry was charged with the misdemeanor of assault with a deadly weapon and was convicted. He prosecuted an appeal to the next higher court which, under that state's procedural law, entitled him to a trial *de novo* on this charge. The prosecutor then obtained a new indictment for the same offense, only this time it was for a felony, assault with intent to kill and inflict serious bodily injury.

The United States Supreme Court in a rather rare display of unanimity held, with only Justice Rehnquist dissenting, that the defendant's due process rights were violated:

> "A person convicted of an offense is entitled to pursue his statutory right to a trail de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration. Cf. United States v. Jackson, 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209." [40 L. Ed. 2d at 635]

Plainly, *Perry* governs the law in this case. The State can not and should not be permitted, after a defendant obtains a new trial either in the trial or appellate, to change the underlying crime so as to increase the severity of the penalty.

Finally, I would follow the reasoning in *Perry,* which concluded that even though the defendant plead guilty

to the new charge, he was not precluded from raising the due process constitutionality of the proceedings:

> "The 'practical result' dictated by the Due Process Clause in this case is that North Carolina simply could not permissibly require Perry to answer to the felony charge. That being so, it follows that his guilty plea did not foreclose him from attacking his conviction in the Superior Court proceedings through a federal writ of habeas corpus." [40 L. Ed. 2d at 636]

The majority, I believe, in order to avoid the clear concepts expressed in *Perry*, has resorted to erasing the distinction between an indictment for unarmed robbery and armed robbery. This ultimately will do a great disservice to the orderly administration of the criminal law. Prosecutors and trial courts will not be helped by today's decision. When criminal procedures and the definition of crimes are blurred, only the criminal defendant gains from the resulting confusion.