# CHARLESTON.

### STATE *v.* JACK SPENCER AND ORAN MEADOWS.

Submitted April 29, 1924.   Decided October 14, 1924.

CRIMINAL LAW—*State May Show as Part of Res Gestae That Accused Was Armed With Deadly Weapon When Arrested at Still.*

> Upon the trial of an accused under indictment for operating and having an interest in an apparatus for the manufacture of intoxicating liquors commonly known as a "moonshine still", the State may show that the defendant when arrested at the still under a warrant charging him with the offense, was armed with a pistol or other deadly weapon.

Error to Circuit Court, Summers County.

Jack Spencer and another were convicted of unlawfully owning, operating, and having an interest in a moonshine still, and they bring error.

*Affirmed.*

*Thos. N. Read, A. A. Lilly,* and *T. J. Lilly,* for plaintiffs in error.

*E. T. England,* Attorney General and *R. A. Blessing,* Assistant Attorney General, for the State.

LITZ, JUDGE:

The defendants Jack Spencer and Oran Meadows were jointly indicted and convicted in the circuit court of Summers county for unlawfully and feloniously owning, operating, and having an interest in, an apparatus for the manufacture of intoxicating liquors, commonly known as a "moonshine still". To the judgment upon a verdict of guilty, fixing the punishment of each at two years confinement in the penitentiary and a fine of $300.00, the defendants obtained this writ.

On the night of April 26th, 1921, R. L. Lilly, a policeman of the city of Hinton, and four prohibition officers, having a warrant for the arrest of defendants for violating the prohibition law, left Hinton in search of a moonshine still reported as being operated by the defendants. After a journey of ten miles, partly through forest, at three o'clock next

morning the officers discovered a moonshine still in a deep ravine known as "Toney's Hollow," surrounded by woodland and secluded from the public way. They also found close at hand several barrels of mash, twenty bushels of corn meal, a small barrel containing liquor, and other articles; and waiting in concealment until daylight, observed the defendant approaching. Spencer was carrying a zinc tub, and Meadows a sack containing glass jars. Having placed their baggage on the ground, Meadows began dipping water from the boiler of the still, which rested on a furnace, while Spencer sought the keg of liquor. At this juncture they were arrested and searched by the officers, who found on Spencer a forty-five Colt's army pistol. The defendants at the trial denied any interest in, or connection with, the still; and stated further that they were on their way to the home of Dow Meadows to sow oats when arrested. They testified also that the zinc tub and fruit jars belonged to Dow Meadows' wife, a sister of Oran Meadows, and that these chattels were being taken to her from Spencer's home where she had left them the year before.

At the time of their arrest defendants told the officers that they were hunting ginseng, but made no claim of having started to the home of Dow Meadows. Oran Meadows is the step-son of, and makes his home with, Jack Spencer.

In answer to the question: "Did you know there was a still up in that hollow?" Spencer testified: "Well, I had suspicioned that there was one in there, but hadn't been through there for quite a bit and I generally ride a horse and go around the other way; but we went down through there and we walked right up on this outfit, as this gentleman said, and we went down there and looked at it, and I thought if I found a drink of beer I would drink it and, by George, they throwed the guns on us and told us to throw our hands up."

A number of errors are assigned for reversal:

(1) Evidence that the defendant Spencer, when arrested, was armed with a pistol was admitted against him over the objection of defendants. After all the evidence was in, the instructions given, and argument for the State, the defendant requested that the jury be further instructed not to consider the testimony relating to the pistol in arriving at a verdict.

Such evidence is said to be improper because it does not tend to establish the crime charged in the indictment. It is admissible as part of the res gestae, or the circumstances attending the arrest. *State* v. *Powers*, 91 W. Va. 738; 16 C. J. 604. The finding of a deadly weapon upon one of the defendants was also proper to be considered by the jury in weighing the statement that they were on an innocent mission to the home of a relative when arrested.

(2) Error is also assigned to an instruction given for the State, which told the jury that, "Doubt to authorize an acquittal must be a substantial doubt arising from the insufficiency of the evidence, and not a mere possibility of innocence, or a mere vague or uncertain doubt, or an imaginary doubt".

It may be that the evidence, rather than the insufficiency of the evidence, is a proper basis for reasonable doubt, but we do not think the jury could have been misled on this point, especially in view of the giving of two more instructions for the State and seven on behalf of the defendant defining reasonable doubt based upon the evidence. Instructions must be read and considered as a whole, and if when so read and considered it is apparent they could not have misled the jury the verdict will not be disturbed, though one or more of them may not have completely stated the principles intended to be announced for the jury's guidance. *Truman* v. *Wink-O Products Co.*, 96 W. Va. 256, 122 S. E. 745.

(3) Alleged improper admission of evidence in behalf of the State constitutes another assignment of error.

The trial court admitted against the defendant, Spencer, the testimony of E. M. Lilly, a State witness, that on two occasions, at Spencer's home previous to April 26, 1921, Spencer informed the witness that he had moved his still down in Toney's hollow, a little way from its location in the fall of 1920, and dug out a place in the bank so he could fire the mash. There was admitted also against both defendants the statement of the witness that near the time of one of these occasions, at the home of Spencer, the defendant Meadows upon request by Spencer produced a keg of liquor and gave the witness a drink. This evidence is objected to as tending to prove the commission of the crime at times remote

from that stated in the indictment. The still was found April 26, 1921, in Toney's hollow, a few feet from a dug out. The jury could have inferred that it was the still referred to in Spencer's disclosure to the witness Lilly.

. "On trial for keeping liquor for unlawful sale * * * * or other like offenses in violation of the liquor laws, evidence as to defendant's ownership of intoxicating liquors, or of appliances or apparatus used in the manufacture or selling of such liquors, at or within a reasonable time before or after the alleged offense, is ordinarily admissible unless it refers to a time after the beginning of the prosecution. Unless such evidence is too remote in time to be admissible, the disparity in time between it and the time of the alleged offense affects only its weight or probative value." 33 C. J. 752.

Moreover, the State is not limited to proof of a commission of the offense at the time charged in the indictment. The conviction of the defendants was justified if a reasonable inference may have been drawn from all the facts and circumstances that they had manufactured intoxicants within the period covered by the indictment. 33 C. J. 758. If the evidence of the State tended to prove two or more commissions of the offense the defendant should have required the State to elect upon which commission it would rely for conviction. This principle has been frequently announced and applied in cases involving sales of intoxicating liquors. *State* v. *Baker,* 93 W. Va. 55. We see no reason for a different rule where the defendants are charged with unlawful manufacture.

The judgment of the circuit court is affirmed.

*Affirmed.*