STATE OF WEST VIRGINIA

*v.*

WAYNE HARLTON GWINN

(No. 14835)

Decided March 11, 1982.

*Lovett and Cooper and James T. Cooper* for appellant.

*Chauncey H. Browning,* Attorney General, *and Ruthann McQuade,* Assistant Attorney General, for appellee.

McGRAW, JUSTICE:

The appellant, Wayne Harlton Gwinn, was indicted for murder in the first degree during the September 1974 term of the (then) Raleigh County Intermediate Court. In March of 1975 a jury returned a verdict finding the appellant guilty of first degree murder with a recommendation of mercy. On February 20, 1976, the appellant petitioned the Supreme Court of Appeals of West Virginia for a writ of error and supersedeas. The Supreme Court of Appeals refused the requested relief by order entered July 21, 1976.

On June 28, 1978, the appellant, who was then incarcerated at the Huttonsville Correctional Facility in Randolph County, filed a petition for a writ of habeas corpus *ad subjiciendum* in the Supreme Court of Appeals requesting his release from custody on the basis that an instruction given at his trial unconstitutionally shifted

the burden of proof on the issue of intent from the State to the defendant in violation of the guidelines established in *State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976). A writ was issued by order entered July 11, 1978, returnable in the Circuit Court of Randolph County on July 31, 1978. On that date, after hearing, the circuit court entered an order declaring the appellant's Raleigh County conviction null and void.

Retrial of the appellant began on July 30, 1979. The jury returned a verdict finding the appellant guilty of first degree murder without a recommendation of mercy. Consequently the appellant was sentenced to life in the penitentiary without chance of parole.

The appellant makes the following assignments of error: (1) the court erred by refusing to amend State's Instruction Number A to instruct the jury they could not return a verdict greater than murder in the first degree with a recommendation of mercy, the verdict returned in the appellant's first trial; (2) the court erred by refusing to sentence the appellant pursuant to a recommendation of mercy; (3) the court erred by admitting into evidence an oral inculpatory statement made by the appellant, without sufficient proof of its voluntariness and without sufficient inquiry into whether the appellant understood his *Miranda* rights; (4) the court erred by not permitting the appellant to testify about a specific instance of the victim's past behavior relating to violent tendencies of which the appellant was informed, and which gave the appellant reason to fear the victim; (5) the court erred by failing to try the appellant within the same term of court during which habeas corpus relief was granted; (6) the court erred by denying the appellant's motion for a mistrial when one of the State's witnesses expressed an unsolicited prejudicial remark on cross-examination; and (7) the court erred by permitting one of the State's witnesses to offer prejudicial testimony too remote in time to be of relevance to the offense.

Stanley Logan, a twenty-year-old man, was shot and killed by the appellant on the evening of June 24, 1974, in front of Bonner's Store near Piney View in Raleigh

County. The appellant, a fifty-year-old disabled miner, admits shooting Stanley Logan, but claims he acted in self-defense.

Testimony presented on behalf of the appellant indicates that on June 20, 1974, the appellant's son, Dennis Gwinn, was beaten by Stanley Logan. The beating was the result of a disagreement between the appellant's son and Stanley Logan that occurred after Dennis Gwinn accidently broke an illuminated sign near Bonner's Store. Angered by the broken sign, Stanley Logan struck Dennis Gwinn several times and told him to fix the sign by the next evening or he would kill him and his father. Logan also threatened the lives of the appellant and his son if they should seek a warrant in response to the beating.

Dennis Gwinn returned home that evening and informed his father of the beating. On each of the following three evenings the appellant went to Bonner's Store in an attempt to contact Stanley Logan and talk to him. These attempts were unsuccessful.

On the evening of June 24, 1974, Dennis Gwinn went to Bonner's Store shortly before dark. The appellant testified that he had given his son permission to go there to buy a bottle of pop. When his son did not return home as soon as expected, the appellant went to look for him. When he arrived at Bonner's Store Stanley Logan was there. A heated argument between Logan and the appellant ensued during which there was talk of fighting. The appellant testified that at one point during the argument, Logan, who was sitting on the hood of his car, slid down, removed his glasses, and then struck the appellant knocking him back two or three steps. At this point the appellant fired one shot from the pistol he had in his jacket pocket, fatally wounding Stanley Logan. Logan fled to a nearby house trailer and died shortly thereafter.

The appellant's version of the events surrounding the shooting is disputed by several witnesses who were present at Bonner's Store on the night of the shooting. These witnesses testified that Dennis Gwinn arrived at

the store shortly before Stanley Logan on the evening of June 24th. Shortly thereafter Dennis Gwinn left the store, and while leaving in his car sounded his horn twice. At that point the appellant approached from across the road and the argument between Logan and the appellant followed. The testimony indicates that Logan did not strike the appellant. Rather their testimony shows Logan removed his glasses, turned around, and was shot by the appellant without warning, from a distance of four to six feet. Their testimony further shows that after Logan was shot the appellant ran after Logan shouting, "I'll kill you—you son of a bitch." One witness testified that after the shooting he heard Dennis Gwinn laugh and say, "Come on Dad, I think he's had enough." The appellant denies that any such statements were made.

After the shooting the appellant and his son returned home. The appellant then called his brother who transported the appellant and his son to Prince in Raleigh County where the appellant threw his weapon in the New River. The brother then took the appellant to the State Police Headquarters in Beckley where the appellant surrendered.

## I.

In the appellant's first two assignments of error, he protests the imposition of a harsher sentence upon retrial than that imposed pursuant to his original conviction. The appellant first contends that it was error for the trial court to refuse to amend State's Instruction Number A to instruct the jury that they could not return a verdict providing for punishment in excess of murder in the first degree with a recommendation of mercy, the verdict returned in the appellant's first trial. This contention is without merit.

In *State v. Eden*, 163 W.Va. 370, 256 S.E.2d 868 (1979) this Court held, "upon a defendant's conviction at retrial following prosecution of a successful appeal, imposition by the sentencing court of an increased sentence violates due process and the original sentence must act as a

ceiling above which no additional penalty is permitted."
256 S.E.2d at 876. We reiterated this holding in *State v.
Cobb,* ____ W.Va. ____, 277 S.E.2d 468 (1980), and there
clarified the application of the rule with regard to jury
instructions:

> [The] proper procedure upon retrial is to submit
> the case to the jury under proper instructions for
> every degree of homicide which the evidence
> supports, and if the jury returns a verdict in the
> second trial for an offense greater than that
> returned in the first trial, the trial court should
> then enter judgment for the offense for which the
> first conviction was obtained.
>
> Syllabus Point 3, in part,
> *State v. Cobb, supra.*

Under our holding in *Cobb* the trial court was clearly
correct in refusing to amend State's Instruction Number
A as requested by the appellant.

The appellant next contends that the trial court erred
by failing to sentence him pursuant to a recommendation
of mercy. Under our holdings in *Eden* and *Cobb* the trial
court's imposition of a greater penalty than that imposed
at the appellant's first trial is clearly erroneous. However,
after the appellant's petition was filed in this case the
Governor inexplicably commuted his life sentence to a
term of five to eighteen years. Because of the Governor's
commutation of the appellant's sentence, further discus-
sion of this assignment of error would be meaningless.

## II.

At trial the prosecution was permitted to introduce into
evidence an oral statement made by the appellant shortly
after his arrest in which the appellant admitted throwing
the murder weapon into the New River. The appellant
contends that it was error to admit this statement into
evidence because there was insufficient proof of its
voluntariness.

At the in camera hearing to determine the admissibility
of the statement, the prosecution introduced the testi-
mony of the two state police officers who were present

when the appellant surrendered. Trooper R. E. Haynes testified that he orally advised the appellant of his rights and that the appellant appeared to understand them, but that the appellant refused to sign a waiver of rights form. Trooper R. V. Watkins testified that after the appellant was advised of his rights, he asked the appellant where the weapon was, and the appellant responded voluntarily that he had thrown the weapon in the river. Trooper Watkins asked this question knowing that the appellant had refused to sign the waiver of rights form.

The appellant testified at the hearing that he was advised of his rights, but that he did not understand that he had a right to obtain counsel before making statements. He further testified that he refused to sign the waiver of rights form because he didn't understand it, and was unable to read the form without his glasses. At the conclusion of this testimony the trial court ruled that Trooper Watkins could testify before the jury that the appellant told him he threw the gun in the New River.

When the State seeks to admit an oral or written inculpatory statement into evidence against an accused, the trial court has a mandatory duty to hear the evidence out of the presence of the jury in order to determine its voluntariness. *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966), *overruled in part on other grounds, State ex rel. White v. Mohn*, _____ W.Va. _____, 283 S.E.2d 914 (1981). The State bears the burden of proof on the issue of voluntariness: "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or part of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syllabus Point 5, *State v. Starr*, 158 W. Va. 905, 216 S.E.2d 242 (1975).

The scope of review this Court will apply to a trial court's decision on the admissibility of a confession is set out in syllabus point three of *State v. Vance*, 162 W.Va. 467 250 S.E.2d 146 (1978):

A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

In the instant case there was sufficient evidence to support the trial court's conclusion that the statement sought to be introduced was voluntarily made without threat or coercion. Although the trial court made no specific findings on the question of whether the appellant understood his rights, which would be the preferable procedure, there was no evidence introduced that the appellant was incapable of understanding his rights, and the appellant's claim that he did not understand his rights was countered by the testimony of Trooper Watkins. From the evidence presented we cannot say that the decision of the trial court on the issue of voluntariness is plainly wrong. Moreover any alleged error which may have occurred on this point was rendered harmless by the appellant's own admission before the jury on direct examination, and the testimony of the appellant's son and brother, that the appellant did in fact throw the weapon used in the shooting into the New River.

### III.

The appellant next contends that the trial court erred by not permitting him to testify about a specific instance of the victim's past behavior relating to violent tendencies of which the appellant was informed, and which gave the appellant reason to fear the victim.

As a general rule evidence of the character or reputation of a deceased victim in a homicide case is inadmissible. However an exception is made to the general rule in West Virginia where the defendant relies upon self-defense. *See, e.g., State v. Collins,* 154 W.Va. 771, 180 S.E.2d 54 (1971). Normally evidence of a deceased victim's violent character must be presented in the form of reputation evidence. *State v. Porter,* 98 W.Va. 390, 127 S.E. 386 (1925). There are certain situations, however, where prior specific acts of violence on the part of the deceased victim may be shown. For example, where the the specific acts of violence are so connected with the facts and circum-

stançes surrounding the homicide as to be part of the *res gestae,* such specific acts are admissible, *see State v. Porter, supra,* or where the prior specific acts of violence are directed at the defendant, they are admissible. *See Wilhelm v. Whyte,* 161 W.Va. 67, 239 S.E.2d 735 (1977).

Specific acts of violence on the part of a deceased victim are also admissible into evidence, although not a part of the *res gestae,* nor directed at the defendant, when the defendant relies upon self-defense and has personal knowledge of such specific acts of violence. In syllabus point one of *State v. Hardin,* 91 W.Va. 149, 112 S.E. 401 (1922), the Court held:

> In a prosecution for murder, where self-defense is relied upon to excuse the homicide, and there is evidence showing, or tending to show, that the deceased was at the time of the killing, making a murderous attack upon the defendant, it is competent for the defendant to prove the character or reputation of the deceased as a dangerous and quarrelsome man, and also to prove prior attacks made by the deceased upon him, as well as threats made to other parties against him; and, if the defendant has knowledge of specific acts of violence by the deceased against other parties, he should be allowed to give evidence thereof.

In reaching this conclusion the Court reasoned:

> It is quite well established that, where self-defense is relied upon to excuse a homicide, and there is evidence tending to establish that defense, it is competent to show the character of the deceased party for violence, and specially is this true when the person charged with the crime has knowledge of such traits of character, for the evidence, not only to some extent characterizes the acts of the deceased, but also has a tendency to show the mental state in which the defendant was at the time to [*sic*] the homicide. In determining the guilt or innocense of one charged with murder, where self-defense is relied upon, the jury should, as near as possible, be put in the position of the accused. They must view the occurrence from his standpoint, for it is their

province and function to determine whether or not he had reasonable ground to fear death or great bodily harm at the hands of the deceased. In order to do this intelligently, they should not only be informed of the physical surroundings of the occurrence at the time of the homicide, but as far as possible, be acquainted with the defendant's mental attitude, so far as the same was induced by acts of the deceased at or before the homicide. And this mental attitude would not only be affected by acts of violence on the part of the deceased toward the defendant, but it would no doubt be materially affected if the defendant had knowledge of acts of violence committed by the deceased toward the defendant, but it would no doubt be materially affected if the defendant had knowledge of acts of violence committed by the deceased toward other persons without any, or upon very slight, provocation. We are of opinion that all of this evidence should have been admitted in order that the jury might view the occurrence from the standpoint of the defendant at the time. . . . [W]here the issue is whether or not the accused had reasonable ground to believe himself in imminent danger, he may show knowledge of specific instances of violence on the part of the deceased.

91 W. Va. at 153-54,
112 S.E. at 402-03.

This result was reaffirmed in *State v. Porter*, 98 W. Va. 390, 127 S.E. 386 (1925), where the Court stated, "if the defendant has knowledge himself of specific acts of violence by [the] deceased against parties, he should be allowed to give evidence thereof." 98 W.Va. at 400, 127 S.E. at 390. However, the Court further held that evidence of specific acts of violence "which did not concern the defendant and at which the latter was not present and of which he had no personal knowledge" is inadmissible. Syllabus Point 2, *State v. Porter, supra*. The position adopted by the Court in *Hardin* and *Porter* is consistent with the modern trend of authority, which holds that:

> [I]f, prior to the homicide, the defendant, either through his own observation or through information communicated to him by others, including the deceased himself, knew of other acts of violence of the deceased, he may, in support of his contention that he had reasonable grounds to believe himself in iminent danger from an assault by the deceased, introduce evidence of such prior unlawful acts of violence by the deceased.
>
> 40 Am. Jur. 2d, *Homicide*
> § 306 (1968).

In the case at hand the appellant attempted to testify on direct examination about his personal knowledge of Stanley Logan's violent tendencies. The appellant was premitted to testify that he knew that Logan was "a rough, well, muscular, heavy-built guy," and that he knew what Logan had "done to my son and I knew what he'd done to other people, and I knew he was a good fighter . . . ." However, when the appellant was asked, "what had [Logan] done to other people, if you know," the State objected to the attempt to show a specific incident of violent behavior. Defense counsel vouched the record, stating that he was attempting to show that the appellant knew that Logan "had put a pin through the penis of another boy a few years prior to that time." The trial court sustained the State's objection, stating:

> That would be a specific incident of his cruel and violent behavior. There is a way to do that. I know what you're trying to do. You're trying to prove that Stanley was a bad boy and Gwinn was so afraid of him that the old man had to arm himself with a pistol and come up there. . . .
>
> I'm not going to let you show that. He may have known about it, that he was a bad boy, but I won't let you prove isolated incidents. There's a way for you to do this, and you undoubtedly know how to prove that the deceased was a violent and terrible fellow, but I'll not let you show isolated incidents.

The trial court was apparently of the opinion that the only appropriate method of proving the deceased victim's violent character was by reputation evidence. This posi-

tion is clearly erroneous under our holdings in *Hardin* and *Porter*. The evidence the appellant attempted to introduce clearly went to the issue of self-defense. The crucial issue in this situation is whether the appellant had knowledge of the deceased victim's violent character. Under this exception to the general rule the form of the character evidence is unimportant. In such instances the victim's violent character may be shown by either reputation evidence or specific instances of violent behavior. *See State v. Porter, supra; State v. Hardin, supra;* F. Cleckley, *Handbook on Evidence* § 32, at 91-94 (1979 Supp.).

The issue then, is whether the exclusion of this evidence constituted reversible error. We conclude it is not. The jury was permitted to hear testimony of other specific acts of violence by the deceased, such as the beating of the appellant's son, and the appellant was permitted to testify that he knew the deceased had a violent character and that the deceased was a strong muscular man and a good fighter. The evidence the appellant wished to present, which involved an incident remote in time to the homicide, is therefore cumulative in nature, and its exclusion constitutes an insufficient basis upon which to base a claim of reversible error.

## IV.

The appellant next contends that the State's failure to retry him within the same term of court during which habeas corpus relief was granted constitutes a denial of his constitutional right to a speedy trial.

The right of a criminal defendant to a speedy trial is guaranteed by both the state and federal constitutions. U.S. Const. amend. VI; W. Va. Const. art. 3, § 14.[1] In recognition of this right, W. Va. Code § 62-3-1 (Cum. Supp. 1981) requires that a criminal defendant be tried in the

---

[1] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

"[T]rials of crimes, and misdemeanors . . . shall be . . . without unreasonable delay . . . ." W. Va. Const. art. 3, § 14.

term in which he is indicted, unless good cause for continuance be shown.[2]

However, this Court has held that it is W. Va. Code § 62-3-21 (1977 Replacement Vol.) which establishes the outermost limit of what constitutes a speedy trial under the State Constitution. *State ex rel. Workman v. Fury*, ___ W.Va. ___, 283 S.E.2d 851 (1981); *State v. Young*, ___

---

[2] W. Va. Code, § 62-3-1 provides:

When an indictment is found in any county, against a person for a felonoy or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term. If any witness for the accused be a nonresident of the State, or absent therefrom in any service or employment, so that service of a subpoena cannot be had upon him in this State, or is aged or infirm so that he cannot attend upon the court at the trial, the accused may present to the court in which the case is pending, or to the judge thereof in vacation, an affidavit showing such facts, and stating therein what he expects to prove by any such witness, his name, residence, or place of service or employment; and if such court or judge be of the opinion that the evidence of any such witness, as stated in such affidavit, is necessary and material to the defense of the accused on his trial, an order may be made by such court or judge for the taking of the deposition of any such witness upon such notice to the prosecuting attorney, of the time and place of taking the same, as the court or judge may prescribe; and in such order the court or judge may authorize the employment of counsel, practicing at or near the place where the deposition is to be taken, to cross-examine the witness on behalf of the State, the reasonable expense whereof shall be paid out of the treasury of the State, upon certificate of the court wherein the case is pending. Every deposition so taken may, on the motion of the defendant, so far as the evidence therein contained is competent and proper, be read to the jury on the trial of the case as evidence therein. A court of record may appoint counsel to assist an accused in criminal cases at any time upon request. A copy of the indictment and of the list of the jurors selected or summoned for his trial, as provided in section three [§ 62-3-3] of this article, shall be furnished him, upon his request, at any time before the jury is impaneled. In every case where the court appoints counsel for the accused and the accused presents an affidavit showing that he cannot pay therefor, the attorney so appointed shall be paid for his services and expenses in accordance with the provisions of article twenty-one [§ 29-21-1 et seq.], chapter twenty-nine of this Code.

W.Va. ___, 280 S.E.2d 104 (1981); *State ex rel. Shorter v. Hey*, ___ W.Va. ___, 294 S.E.2d 51 (1981); *State v. Lacy*, 160 W.Va. 96, 232 S.E.2d 519 (1977). W. Va. Code § 62-3-21 provides that a person must be forever discharged from prosecution if not tried within three terms after the return of the indictment unless certain enumerated causes for continuance are shown.[3]

In syllabus points three and four of *State v. Holland*, 149 W.Va. 731, 143 S.E.2d 148 (1968), this Court held:

> Code, 62-3-21, as amended, requiring that an accused be tried within three terms of court from the finding of the indictment, with certain exceptions, is not applicable where a defendant, after entering a plea of guilty, is sentenced to the penitentiary and later institutes a habeas corpus proceeding, and as a result thereof the conviction and sentence are held to be void, because he could not be tried again while he was confined in the penitentiary and the statute had been satisfied at the first trial.

___

[3] W. Va. Code § 62-3-21 provides:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace, city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one the causes hereinabove set forth relating to proceedings on indictment.

> When a defendant institutes habeas corpus proceedings and has his conviction and sentence held void, he waives the provisions of the statute, Code, 62-3-21, as amended, to be tried within three terms of the finding of the indictment, making it inapplicable in such cases; and by accepting the benefits of having his conviction and sentence set aside and held for naught, he must also accept any disadvantage which may accrue therefrom.

This holding is equally applicable to the one-term rule of W. Va. Code, § 62-3-1. Thus neither W. Va. Code § 62-3-1, nor W. Va. Code § 62-3-21 addresses the situation where a prior conviction has been held null and void in a habeas corpus proceeding. This does not mean, however, that a criminal defendant who secures relief by writ of habeas corpus waives his constitutional right to a speedy trial.

In this case habeas corpus relief was granted by the Circuit Court of Randolph County July 31, 1978. Retrial of the appellant began July 30, 1979. Retrial occurred within three terms after the ending of the term at which habeas corpus relief was granted.[4] This is not an unreasonable not oppressive delay under the circumstances, and we therefore reject the appellant's contention.

## V.

During cross-examination of a State witness, counsel for the appellant asked the following question:

Q: "The Valley Bell light wasn't on, to your knowledge?"

The witness answered:

A. "I don't remember if it was on or not. If he didn't intend on shooting him, what would he have the gun for?"

---

[4] W. Va. Code § 51-2-1j (1981 Replacement Vol.) provides that the terms of court for the county of Raleigh shall be held "on the third Monday in January, on the third Monday in April, and on the third Monday in September."

Counsel for the appellant immediately objected to this statement and made a motion to strike the testimony. The trial court granted the motion to strike and instructed the jury to disregard the statement. Counsel for the appellant then made a motion for a mistrial on the grounds that the statement was so prejudicial that it could not be corrected by an instruction to the jury. The trial court denied this motion, but admonished the witness before the jury, and instructed the jury a second time that "the unsolicited, unasked for conclusion that is in the mind of this witness, which he blurted out before you, is not to be considered as evidence in any way." The appellant contends the denial of his motion for a mistrial constitutes reversible error. We disagree.

In syllabus point seven of *State v. Arnold*, 159 W.Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds, State v. Demastus*, 165 W.Va. 572, 270 S.E.2d 649 (1980), we held: "Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." *Quoting* Syllabus Point 18, *State v. Hamrick*, 151 W.Va. 1, 151 S.E.2d 252 (1966). There are extraordinary situations where the objectional evidence is so prejudicial that an instruction to the jury to disregard it is ineffective, and a mistrial is an appropriate remedy. *See, e.g., Cannellas v. McKenzie*, 160 W.Va. 431, 236 S.E.2d 327 (1977); *see generally*, F. Cleckley, *Handbook on Evidence* § 18, at 38 (1979 Supp.). However, the objectional statement in this case does not rise to that level. The prompt action of the trial court, which twice instructed the jury to disregard the statement, precluded any prejudicial error. *Cf., State v. Cobb*, 122 W.Va. 97, 7 S.E.2d 443 (1940); *State v. McNemar*, 108 W.Va. 237, 151 S.E. 176 (1929).

## VI.

Finally, the appellant objects to the admission into evidence of testimony offered by a State witness. The witness testified that he had been talking with the appellant's son approximately three to four hours prior to the shooting when they were interrupted by the appel-

lant, whereupon the appellant's son told the witness "to move" because he "had to talk to his dad." The appellant contends it was error to admit this testimony because it is too remote to the alleged crime and casts a prejudicial inference upon the appellant on the issues of deliberation and premeditation.

A theory supporting the element of premeditation advanced by the prosecution at trial was that the appellant and his son planned a confrontation with Stanley Logan. Evidence supporting this theory was introduced by several witnesses for the State who testified that when Logan arrived at Bonner's Store, the appellant's son got in his car, drove up the road, and sounded his horn twice, whereupon the appellant emerged from across the road and approached Logan. The evidence of which the appellant here complains, when considered with the other evidence presented, could tend to prove that such a premeditated plan existed, and it therefore a clearly relevant to the issues raised.

As a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility. *Arbogast v. Vandevander,* ____ W.Va. ____, 245 S.E.2d 620 (1978). There may, however, be some instances where the evidence is so remote in time as to be inadmissible, *see State v. Spencer,* 97 W.Va. 325, 125 S.E. 89 (1924), but the decision on remoteness as precluding the admissibility of evidence is generally for the trial court to determine in the exercise of its sound discretion. In *Yuncke v. Welker,* 128 W.Va. 299, 311-12, 36 S.E.2d 410, 416 (1945), we stated, quoting *States v. Yates,* 21 W.Va. 761 (1883), that:

> [A]n abuse of discretion is more likely to result from excluding, rather than admitting, evidence that is relevant but which is remote in point of time, place and circumstances, and that the better practice is to admit whatever matters are relevant and leave the question of their weight to the jury, unless the court can clearly see that they are too remote to be material.

In this case the testimony presented by the State's witness was relevant to the issues before the jury, and therefore the trial court did not abuse its discretion by admitting the testimony into evidence.

For the foregoing reasons the decision of the Circuit Court of Raleigh County is affirmed.

*Affirmed.*