# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

June 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 12-0955** (Berkeley County 11-F-136)

**Ronald D. Smith,**
**Defendant Below, Petitioner**


## MEMORANDUM DECISION

Petitioner Ronald D. Smith, by counsel Christopher J. Prezioso, appeals his conviction of two counts of sexual abuse by a parent, guardian, or custodian and one count of sexual assault in the third degree. He was sentenced for these crimes by order of the Circuit Court of Berkeley County entered on July 9, 2012. Respondent State of West Virginia is represented by Cheryl K. Saville.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming is appropriate under Rule 21 of the Rules of Appellate Procedure.

### FACTS

Petitioner was friends with Mr. B. and his son J.B., the victim herein.[1] In 2002, J.B. was twelve years old and petitioner was an adult. Petitioner often engaged in sports and other activities that were fun for the child. However, J.B. testified that petitioner began doing things that made the boy uncomfortable, such as touching the boy and demanding kisses. J.B. testified that something "more drastic" occurred on August 18 and 19, 2002. On August 18, Mr. B. had given permission for J.B. to go with petitioner to watch a football game on television and then stay overnight with petitioner at the home where petitioner was residing. J.B. testified that on this night, petitioner digitally penetrated J.B.'s anus, touched J.B.'s genitalia, and caused J.B. to touch petitioner's genitalia until petitioner ejaculated. J.B. testified that early the next morning of August 19, petitioner got into the shower with J.B. and touched the boy's buttocks and genitalia.

---

[1]Consistent with our usual practice, in view of the sensitive nature of this case the Court refers to the victim and his family by their initials. *See, Clifford K. v. Paul S.*, 217 W.Va. 625, 630 n.1, 619 S.E.2d 138, 143 n.1 (2005).

J.B. also testified at trial about subsequent acts of sexual conduct that petitioner committed against J.B. while J.B. was still a minor.[2] J.B. testified that petitioner had moved out of state but often returned to visit the victim's family in West Virginia, staying at their home and sleeping in J.B.'s bedroom with J.B. According to J.B.'s testimony, during each of these multiple visits petitioner touched J.B.'s genitalia and caused J.B. to touch petitioner's genitalia.

J.B. did not reveal these crimes to anyone until the evening of December 5, 2010, when he told members of his family. On the early morning of December 6, 2010, shortly after he told his parents, J.B. spoke to petitioner using the loudspeaker feature of his cellular telephone. J.B. simultaneously called his parents using his sister's cellular telephone and then held the two telephones close together so that his parents could hear what he and petitioner said. This conversation was not recorded, but the circuit court allowed J.B. and his parents to testify about it at trial.

Reportedly, J.B. began the December 6 discussion by confronting petitioner with allegations that petitioner had previously sexually molested another boy, D.D., saying something to the effect that "I [J.B.] have a hard time believing that you didn't do to that little boy of what you did to me." J.B. also asked "why did you select me [J.B.] [to victimize?]" J.B. testified that petitioner responded, "once you['re] labeled something you just follow the pattern." Mr. B. testified that petitioner said "I [petitioner] was locked up for five years . . . I was told these things over and over and over again that I was this kind of person . . . and after a while you just begin to believe that you are that person and . . . I just acted out of impulse and did that." Although Mrs. B. testified that petitioner never admitted to sexual conduct against J.B., it is obvious from her testimony that his answers indicated to her that he had committed these acts. Mrs. B. remembers, inter alia, that petitioner said "haven't you done anything, you know, wrong in your life[?]"

After J.B. filed a police report, the police arranged for J.B. to make a recorded telephone call to petitioner on December 10, 2010. The audio recording of this call was admitted at trial. During this call, J.B. tried to get petitioner to talk about the subject they had discussed during the December 6 call, but petitioner refused, saying he wanted J.B. to visit him so they could talk in person.

After holding a pre-trial *McGinnis* hearing, the circuit court allowed the State to present at trial the 404(b) testimony of D.D. *See,* W.V.R.E. 404(b); Syl. Pt. 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). D.D. testified how in 1976 petitioner befriended the then-ten-year-old D.D. and his family, engaged in fun activities with the child, and later, sexually molested D.D. The court also read a stipulation informing the jury that petitioner had pled no contest to a crime against nature as it relates to a sexual act against D.D. in 1976; that petitioner was ordered to serve a penitentiary sentence; and petitioner was released from this incarceration on October 12, 2001. The court instructed the jury that evidence about D.D. was admitted for the limited purpose of showing petitioner's intent to commit the crimes charged herein; lustful

---

[2]The prosecutor has represented that petitioner was not criminally charged for these other acts against J.B. because they were misdemeanors and the applicable statute of limitations had expired.

disposition toward children; motive for befriending J.B. and his family; and to place in context the December 6 telephone conversation.

At the April of 2012 trial, the jury found petitioner guilty of two counts of sexual abuse by a parent, guardian, or custodian in violation of West Virginia Code § 61-8D-5(a), and one count of sexual assault in the third degree in violation of West Virginia Code § 61-8B-5(a)(2). On July 9, 2012, the court sentenced petitioner to the statutory terms of incarceration for each crime, said sentences to run consecutively, for a total of twenty-one to forty-five years in prison. This is petitioner's direct appeal.

## STANDARD OF REVIEW

When reviewing an order denying a motion for new trial and when reviewing a trial court's findings and rulings, we apply the following standards of review:

> 1. "'"Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).' Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997)." Syllabus point 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

> 2. "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pts. 1 and 2, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). Furthermore, some of petitioner's assignments of error require specific standards of review, as discussed below.

## DISCUSSION

### I. Sufficiency of the evidence to support the convictions:

Petitioner argues that the circuit court erred in denying his motions for judgment of acquittal and his motion for new trial because, petitioner asserts, there was insufficient evidence to support his convictions. The State asserted that the misconduct in August of 2002 occurred at the home of petitioner's sister, with whom petitioner was residing at the time. However, his sister testified that she does not remember petitioner bringing any children to the home in August of 2002, and that her home is small and she would have known if a child was present. Petitioner also asserts that J.B.'s testimony conflicted with that of petitioner's sister; specifically, J.B.

testified that the sister and her husband saw J.B. as he was heading to the basement to watch television with petitioner.

Furthermore, petitioner challenges the credibility of J.B.'s allegations because of the eight-year delay in reporting the same and because J.B. continued a friendship with petitioner after August of 2002. Petitioner suggests that around the time in 2010 when J.B. first made these allegations, J.B. was experiencing trouble in his life and created a false story to somehow benefit himself. Petitioner notes that there was no scientific evidence linking him to the alleged acts. He argues that he was convicted based upon the improper introduction of 404(b) and other bad acts evidence.

A criminal defendant raising a sufficiency of the evidence challenge has a heavy burden:

> 7. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus point 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

> 8. "When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt." Syllabus point 2, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

Syl. Pts. 7 and 8, *White*. Crediting all of the evidence in a light most favorable to the State, we find no error in the circuit court's denial of the motions for judgment of acquittal and for new trial. J.B. testified very directly and explicitly as to what petitioner did to him. Moreover, the jury heard testimony about the telephone calls. The State's witnesses were subject to cross-examination and the jury was in the best position to determine credibility. We will not second-guess the jury's finding.

Finally, petitioner argues that there was insufficient evidence to show that he was a "custodian of a child under his . . . care, custody or control" as required for a conviction under the 1998 version of West Virginia Code § 61-8D-5(a). We easily dispense with this argument. We held in Syllabus Point 1 of *State v. Stephens*, 206 W.Va. 420, 525 S.E.2d 301 (1999), that

4

"[a] babysitter may be a custodian under the provisions of *W.Va. Code*, 61–8D–5 [1998], and whether a babysitter [is] in fact a custodian under this statute is a question for the jury." Mr. B. testified that he granted permission for petitioner to take J.B. to petitioner's residence to spend the night on August 18, 2002. Mr. B. testified that petitioner was supposed to protect and watch over J.B., not harm him. Because J.B. was under the sole care, custody, control, and supervision of petitioner when the sexual misconduct occurred on August 18 and 19, 2002, petitioner most certainly was acting in a custodial role for purposes of the statute.

**II. Admission of Rule 404(b) evidence about D.D.:**

Next, petitioner argues that the circuit court erred in admitting the 404(b) evidence regarding D.D. On appeal, this Court applies a three-part standard of review when considering a trial court's admission of Rule 404(b) evidence:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403 [of the West Virginia Rules of Evidence].

*State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996). We have also held that,

> [w]here an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. Pt. 2, *McGinnis*.

Petitioner argues that the State failed to prove by a preponderance of the evidence that the acts against D.D. actually occurred. However, we find no clear error in the circuit court's finding that they did occur. At the pre-trial *McGinnis* hearing, the circuit court heard testimony from D.D. about his history with petitioner and about petitioner's sexual misconduct. Moreover, the court had official documents reflecting petitioner's conviction for committing a sexual act against D.D. Petitioner argues that D.D. could not remember certain specific details, but this is understandable given the passage of time and D.D.'s age at the time of the misconduct. A review of the hearing transcript shows that D.D., in both his direct and cross-examination testimony, was very clear in his recollection of how petitioner had befriended him and then molested him.

Next, petitioner argues that even if the State proved that the acts against D.D. did occur, the evidence nevertheless should have been excluded as irrelevant under Rules 401 and 402 and/or as unfairly prejudicial under Rule 403 of the West Virginia Rules of Evidence. We review the admission of 404(b) evidence "in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect." *McGinnis*, 193 W.Va. at 159, 455 S.E.2d at 528.

Upon a review of this evidence, we find no abuse of discretion in the trial court's decision to admit it. We begin by noting that the circuit court followed the proper procedure under *McGinnis* and gave a limiting instruction to the jury. When evaluating this evidence, the circuit court concluded that, based on the marked similarities in how petitioner befriended both boys and ultimately molested them, the D.D. evidence was relevant for the limited purpose of showing intent, lustful disposition toward children, motive for befriending the victim and his family, and to put in context the December 6 telephone conversation. We have previously ruled that this type of 404(b) evidence is admissible in cases involving child sexual assault:

> [c]ollateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment.

Syl. Pt. 2, in part, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). The court also performed the Rule 403 balancing test to conclude that the probative value substantially outweighed the danger of any unfair prejudice.

Although the acts against D.D. were committed many years prior to the acts against J.B., "[a]s a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." Syl. Pt. 6, *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982). Furthermore, the acts against J.B. were committed less than one year after petitioner was released from incarceration for his acts against D.D.

**III. Evidence of other, uncharged acts petitioner committed against J.B.:**

Petitioner argues that J.B.'s testimony about the sexual acts that occurred during

petitioner's visits to J.B.'s home should have been excluded because the State did not prove that those acts occurred.

The West Virginia Rules of Evidence allocate significant discretion to the trial court in making evidentiary rulings. Syl. Pt. 1, *State v. Cyrus*, 222 W.Va. 214, 664 S.E.2d 99 (2008). The State argues that this evidence goes to explain why J.B. delayed reporting. The circuit court ruled that this evidence was intrinsic to the charged crimes, but nonetheless, the court performed a 404(b) analysis. At the pre-trial *McGinnis* hearing and at trial, J.B. testified that these acts did occur. We find no abuse of discretion in the circuit court's decision to admit this evidence.

**IV.  Admission of evidence of the two telephone calls:**

Petitioner argues that testimony about the December 6 telephone call should have been excluded because of the unique circumstances of how Mr. and Mrs. B. were able to listen to the call. He argues that it is likely that they did not accurately hear what was said, and Mr. and Mrs. B. were simply allowed to give their inaccurate impressions in order to bolster their son's claims. Petitioner also argues that evidence of both the December 6 and December 10 calls should have been excluded as irrelevant under Rules 401/402 and as unfairly prejudicial under Rule 403 of the West Virginia Rules of Evidence. He argues that there was no admission of abuse during either telephone conversation.

We find no abuse of discretion in the court's rulings allowing this evidence. Because they had known petitioner for years, Mr. and Mrs. B. were able to recognize and identify his voice. They and J.B. were subject to cross-examination, the jury heard the circumstances of the first call and heard the audio recording of the second call, and the jury could assign to this evidence whatever weight it deemed appropriate.

**V.  Admission of evidence about petitioner's police interrogation:**

On January 1, 2011, a state trooper questioned petitioner while he was in custody at a regional jail. Petitioner admits that he had been given his *Miranda*[3] warnings but had not yet invoked his right to counsel, when the trooper asked if petitioner was "aware of what the charges were from." Petitioner reportedly responded, "I think I have an idea."

Petitioner argues that evidence of his answer to this question should have been excluded because it was most likely construed by the jury as an admission. However, we find no abuse of discretion in the trial court's admission of this evidence. Petitioner does not assert that his *Miranda* rights were violated. Simply because the evidence might have been prejudicial does not mean that its probative value was substantially outweighed by unfair prejudice. *See*, W.Va. R. Evid. 403.

**VI. Denial of Motion for New Trial:**

In his last assignment of error, petitioner argues that the circuit court should have granted

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

his motion for a new trial because (1) he should have been acquitted of all counts; (2) the State made improper remarks to the jury; and (3) there was potential juror misconduct. We already rejected the first of these claims when we concluded that there was sufficient evidence to convict. As to the second claim, petitioner fails to provide any argument about this in his brief. Accordingly, we find no error with regard to his second claim.

In his third claim regarding alleged juror misconduct, petitioner suggests that one juror may have been influenced by outside considerations. After the verdict was rendered, counsel for both sides learned that the juror's employment had just been terminated, reportedly because of her jury service. Prior to being excused, the court questioned the juror and she repeatedly stated that her employment situation did not in any way affect her decision on the case. We find that petitioner has failed to show any error with regard to this juror.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II